**Marvin HAMILTON, Plaintiff-Appellant,**

v.

**Richard M. DALEY, et al., Defendants-Appellees.**

No. 85–1127.

United States Court of Appeals, Seventh Circuit.

Submitted Aug. 8, 1985.*

Decided Nov. 18, 1985.

As Amended Dec. 4, 1985.

---

* After preliminary examination of the briefs, the court notified the parties that it had tentatively

concluded that oral argument would not be helpful to the court in this case. The notice

provided that any party might file a "Statement as to Need of Oral Argument." *See* Rule 34(a), Fed.R.App.P.; Circuit Rule 14(f). Plaintiff-appellant has filed such a statement and requested oral argument. Upon consideration of that statement, the briefs, and the record, the request for oral argument is denied and the appeal is submitted on the briefs and record.

Marvin Hamilton, Chicago, Ill., for plaintiff-appellant.

David S. Allen, Asst. State's Atty., Chicago, Ill., for defendants-appellees.

Before CUMMINGS, Chief Judge, and CUDAHY and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

Plaintiff, Marvin Hamilton, filed this Section 1983 suit in the Northern District of Illinois, alleging that defendants, Cook County and officials of the Cook County State's Attorney's Office, violated his civil rights while bringing criminal charges against him. The district court granted summary judgment for defendants and, more than five months later, granted defendants' motion for $1,430 in attorneys' fees. Plaintiff appeals *pro se.* We remand to the district court for further findings.

Prior to filing this suit, plaintiff was apparently self-employed in the business of interviewing and selecting persons to work as models for various clients. On July 28, 1981, while on probation from another conviction, plaintiff was arrested and charged with taking indecent liberties with a child.

Plaintiff alleges that six days after he was arrested, the complaining witness, an unsuccessful applicant for a model-trainee position, signed a statement recanting her story. Plaintiff attached to his amended complaint a receipt for $100 that he had paid to the girl's father. Plaintiff further alleges that the assistant state's attorneys in the Cook County State's Attorney's Office later threatened the complainant and her family with incarceration if they attempted to change their stories.

After his indictment, plaintiff appeared ready for trial on numerous occasions in the fall of 1981, but his trial was repeatedly continued, in part because the complainant and her family failed to appear. The complainant and her mother finally testified, on January 13, 1982, after arrest warrants were issued against them for failure to honor subpoenaes. Plaintiff was convicted of the misdemeanor of contributing to the sexual delinquency of a minor. On February 10, 1982, however, the state trial judge granted plaintiff's motion for a new trial. The case was then continued at least five times until August 8, 1982, when the state's attorney's office *nolle prosequied* the charge. Plaintiff filed the instant suit on May 4, 1983.

█ Plaintiff first argues that the district court erred by granting summary judgment for defendants. We do not reach this issue because plaintiff did not file a timely notice of appeal. The district judge's summary judgment order was entered on June 15, 1984, pursuant to Rule 58, Fed.R.Civ.P., and the order granting attorneys' fees was entered on December 28, 1984. Plaintiff filed a notice of appeal on January 24, 1985. As this was more than thirty days after the grant of summary judgment, it was ineffective to bring up the entire case for review. *Exchange National Bank v. Daniels,* 763 F.2d 286, 292–95 (7th Cir.1985); Fed.R.App.P. 4(a). Consequently, we are without jurisdiction to review the grant of summary judgment for defendants. The only issue properly be-

fore us is the district court's award of attorneys' fees.

## I.

In the English system, the losing side ordinarily pays the winner's attorneys' fees; under the American rule, by contrast, each side pays its own attorney. *Aleyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 269, 95 S.Ct. 1612, 1627, 44 L.Ed.2d 141 (1975). However, there are three major exceptions to the American rule. *Id.* at 258–59. First, when there is a common fund obtained for the benefit of plaintiffs and numerous third parties, fees are paid from the fund rather than out of the pockets of the named plaintiffs. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478–82, 100 S.Ct. 745, 749–51, 62 L.Ed.2d 676 (1980). Second, a party is required to pay the other side's attorneys' fees for any actions undertaken in bad faith. *See Benner v. Negley*, 725 F.2d 446, 449 (7th Cir. 1984). Finally, fees are allowed in suits under statutes in which Congress has specifically authorized fee shifting. In federal courts, this last exception may eventually swallow the American rule for there are now more than one-hundred thirty statutes authorizing payment of attorneys' fees. *See Marek v. Chesny*, —— U.S. ——, 105 S.Ct. 3012, 3035–39, 87 L.Ed.2d 8 (1985) (Appendix to Opinion of Brennan, J., dissenting); 8 Att'y Fee Awards Rep., April 1985, at 2–3. One of the more important fee-shifting statutes is the Civil Rights Attorney's Fees Awards Act of 1976, Pub.L. 94–559, § 2, 90 Stat. 2641 (1976), now codified at 42 U.S.C. § 1988.

Congress enacted this statute to encourage enforcement of civil rights laws without creating another federal bureaucracy. S.Rep. No. 1011, 94th Cong., 2d Sess. 4, *reprinted in* 1976 U.S.Code Cong. & Ad.News at 5908, 5911. The act was intended to encourage private litigants to serve the public interest by bringing suit to vindicate civil rights. *Id.* at 2, *reprinted in* 1976 U.S.Code Cong. & Ad.News at 5910; H.R.Rep. No. 1558, 94th Cong., 2d Sess. 1–3. However, Congress did not wish to encourage every suit that could be brought under the Civil Rights Act. It decided that plaintiffs could recover fees only if they prevailed. *See* 42 U.S.C. § 1988.

But a statute awarding fees only to prevailing plaintiffs, and not to prevailing defendants, while certainly within Congressional power, would provide incentives to bring suit without penalizing litigants who bring suits solely for harassment with no hope for success. *See* Rowe, *Predicting the Effects of Attorney Fee Shifting*, 47 Law & Contemp. Probs. 137, 147 (1984). Meritless lawsuits clog court dockets, delaying the resolution of meritorious suits and diverting judicial resources that could be devoted to worthwhile litigation. Courts exist to settle disputes, not to settle scores. Suits filed with no real hope of victory needlessly bring defendants through the costly and agonizing uncertainty of defending suit. When these defendants are public officials, their professional reputations are threatened, and they may be induced to re-examine their calling to public service. Congress recognized these dangers in providing fees not just to prevailing plaintiffs but to prevailing *parties.* *See* 42 U.S.C. § 1988.

On the other hand, Congress recognized that if losing plaintiffs were required to pay the other side's fees as a matter of course, victorious defendants would be made whole but litigants would be discouraged from bringing even meritorious claims. *See* Rowe, *supra*, at 153–54. In civil rights cases, the fees can run higher than the amount in controversy, *see, e.g., Marek v. Chesny*, —— U.S. ——, 105 S.Ct. 3012, 3014, 3018, 87 L.Ed.2d 1 (1985), yet the benefit that the public receives from clarification of a public official's duties can be enormous. *See Lampher v. Zagel*, 755 F.2d 99, 105 (7th Cir.1985). Lawsuits are always precarious. Even the most watertight case can fail because of the absence of a few key witnesses. Consequently, fees are imposed on nonprevailing plaintiffs only when the suit is frivolous, unreasonable, or without foundation. *Chris-*

*tiansburg Garment v. Equal Employment Opportunity Commission,* 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978). Ignorance of the law, of course, is no excuse; it is the responsibility of counsel to know the law and to know whether a claim is clearly foreclosed by precedent. *See Werch v. City of Berlin,* 673 F.2d 192, 195 (7th Cir.1982).[1] Fees can be imposed even though the losing plaintiff did not act in subjective bad faith. *Christiansburg,* 434 U.S. at 421, 98 S.Ct. at 700.

There is no question that the stakes are high in fee cases. The civil rights statutes will not be enforced adequately if the risk of having to pay the fees of both sides' attorneys deters plaintiffs with valid claims from bringing suit. But the power of the courts to remedy civil rights violations is severely restricted if inordinate delays, due in part to dockets crowded with frivolous suits, become commonplace.

■ Given the costs of an incorrect fees decision, a district court must act with care in awarding fees to prevailing defendants. Overly generous and inappropriate fee decisions against plaintiffs will discourage proper suits, while failure to award fees to defendants when appropriate will undercut any deterrent effect of prior fee decisions, and the number of frivolous filings will continue to climb. Furthermore, inconsistent application of fee-shifting rules exacerbates these problems.

■ Although the decision to award fees and determinations of the amount are committed by statute to the discretion of the district court, it is the duty of this court to assure that consistent standards apply throughout the circuit. Plaintiffs bringing frivolous suits should not be able to hide behind the adventitious circumstance that their case was assigned to a judge who allegedly never awards fees to prevailing

defendants. On the other hand, if some judges were to act too hastily in awarding fees to defendants, then plaintiffs throughout the circuit may be affected.

## II.

■ As noted above, prevailing defendants are not entitled to fees on the same basis as prevailing plaintiffs, *Christiansburg Garment Co. v. Equal Employment Opportunity Commission,* 434 U.S. 412, 419, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978); rather, the suit must be frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith. *Id.* at 421, 98 S.Ct. at 700.[2] We review decisions awarding attorneys' fees under the "abuse of discretion" standard. *Munson v. Friske,* 754 F.2d 683, 696 (7th Cir. 1985). In reviewing such an award, this court will consider whether the district court properly applied the *Christiansburg* factors and whether the court's findings as to those factors are supported by the record. *Reichenberger v. Pritchard,* 660 F.2d 280, 288 (7th Cir.1981).

■ The district court determined that this suit was frivolous. We agree. The Supreme Court, in *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), held that state prosecutors enjoy absolute immunity from suit over activities "intimately associated with the judicial process," *id.* at 431, 96 S.Ct. at 996. Plaintiff's claims were clearly foreclosed by *Imbler* and subsequent decisions of this court. For example, in Counts I and II, plaintiff alleged that then Assistant State's Attorney Michael Markovitz forced the criminal complainant and her mother to testify, fully knowing that the testimony that the two would give would be false. This claim is clearly precluded by prosecutorial immuni-

---

1. Plaintiff was represented by counsel in the district court. Different considerations may apply to *pro se* plaintiffs. *See Hughes v. Rowe,* 449 U.S. 5, 15, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1981).

2. While *Christiansburg Garment Co. v. E.E.O.C.,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648

(1978), involves fee awards under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000a–3(b), the same standards apply to fee awards under 42 U.S.C. § 1988. *Hughes v. Rowe,* 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1981).

ty. *Imbler,* 424 U.S. at 416, 96 S.Ct. at 988; *Heidelberg v. Hammer,* 577 F.2d 429, 432 (7th Cir.1978).[3] Plaintiff charged in Count III that Assistant State's Attorney "John Doe" (later identified as Joseph Nigro) caused a warrant to be issued for plaintiff's failure to appear in criminal court. However, we have long held that securing the attendance of witnesses is associated with the judicial process and that any claim against a prosecutor arising from that activity is barred by absolute immunity. *Daniels v. Kieser,* 586 F.2d 64, 69 (7th Cir.1978), *cert. denied,* 441 U.S. 931, 99 S.Ct. 2050, 60 L.Ed.2d 659 (1979).[4] Securing the attendance of the accused is equally a part of the judicial process, and it should be obvious that this claim is barred under *Imbler.* In the alternative, plaintiff alleged that Assistant State's Attorney "Doe" caused him to be arrested for violating probation. Probation revocation is a criminal proceeding. Prosecutors are absolutely immune from suit for initiating a prosecution and presenting the state's case. *Imbler,* 424 U.S. at 431, 96 S.Ct. at 995; *Hampton v. Hanrahan,* 600 F.2d 600, 633 (7th Cir.1979), *reversed in part on other grounds,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980); *McDonald v. State of Illinois,* 557 F.2d 596, 602 (7th Cir.), *cert. denied,* 434 U.S. 966, 98 S.Ct. 508, 54 L.Ed.2d 453 (1977).[5]

 The central issue in this case is not whether fees are appropriate. We agree without hesitation that they are. However,

Section 1988 provides that "a court, in its discretion, may allow the prevailing party, other than the United States, a *reasonable* attorney's fee as part of the costs" (emphasis added). While the district court is allowed to exercise considerable discretion as to the amount of fees granted, *Berberena v. Coler,* 753 F.2d 629, 632 (7th Cir.1985), its decision is not immune from review, *see Lynch v. City of Milwaukee,* 747 F.2d 423 (7th Cir.1984).

 In the instant case, defendant submitted a bill of costs including twenty-two hours of work at $65 an hour. Fee awards in Cook County in other cases demonstrate that this is a reasonable rate. *Berberena v. Coler,* 753 F.2d at 633 n. 5. The fact that defendants' attorneys are public servants who will not personally receive any fees awarded makes no difference; we have long upheld fee awards to salaried attorneys. *Id.* Fees are based on reasonable billing rates in the relevant community, not net hourly earnings. *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 1545–47, 79 L.Ed.2d 891 (1984).

 In determining a reasonable fee award a district court must consider the relationship between the extent of success and the amount of fees awarded. *Hensley v. Eckerhart,* 461 U.S. 424, 433–36, 103 S.Ct. 1933, 1939–41, 76 L.Ed.2d 40 (1983). The district judge should disallow expenses that should not have been incurred at all.

---

**3.** This court has recognized that the immunity doctrine may have different applications when prosecutors are acting as administrators or investigators rather than as advocates in a judicial proceeding. *Hampton v. Hanrahan,* 600 F.2d 600, 631–32 (7th Cir.1979), *reversed in part on other grounds,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980). Plaintiff also alleged that Assistant State's Attorney Graff coerced the complainant's father into signing the criminal complaint and that, during their investigation, officials in the state's attorney's office told plaintiff's business contacts of the accusations against him, eventually forcing him from the modeling business. While these allegations concern the investigative rather than judicial phases of criminal proceedings, plaintiff does not charge the named defendants with such conduct, and Assistant State's Attorney Graff is

not a defendant in this action. Therefore, these allegations do not alter our conclusion that this case is frivolous.

**4.** We stated in *Daniels:* "Because defendant was attempting to secure Daniels' presence at the resumption of the trial, we must consider that he was functioning as an advocate rather than an investigator or administrator." 586 F.2d at 69.

**5.** Counts IV and V charged State's Attorney Richard M. Daley and Cook County with negligently failing to train and supervise their employees, in allowing the acts alleged in the previous counts to take place. Since absolute immunity protects prosecutorial decisions, supervision of the prosecutors who make these decisions is similarly immune.

*Henry v. Webermeier,* 738 F.2d 188, 192 (7th Cir.1984).

> The district court should exclude from this initial fee calculation hours that were not "reasonably expended." S.Rep. No. 94–1011, p. 6 (1976). Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Copeland v. Marshall,* 205 App.D.C. 390, 401, 641 F.2d 880, 891 (1980) (en banc) (emphasis in original).

*Hensley,* 461 U.S. at 434, 103 S.Ct. at 1940.

 One large award of fees, right or wrong, can have as much of a deterrent effect as numerous small awards. *See Rapisardi v. Democratic Party of Cook County,* 583 F.Supp. 539, 542 (N.D.Ill. 1984). Thus, it is incumbent upon prevailing defendants to prevent their costs from becoming exorbitantly high and to establish that the tasks for which bills are submitted were reasonably necessary to defend the suit. We have held that a plaintiff is only liable for fees and expenses incurred by a defendant after it should have been apparent that further pursuit of the action would be frivolous. *See Soderbeck v. Burnett County,* 752 F.2d 285, 295 (7th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 2360, 86 L.Ed.2d 261 (1985); *Hermes v. Hein,* 742 F.2d 350, 358 (7th Cir.1984). It follows that a defendant cannot unreasonably run up expenses when it is obvious that the lawsuit is without foundation and

it is within defendant's power to end it.[6] Of course, a plaintiff is responsible for pursuing bootless claims, and perhaps it could be said that such a wrongdoer should pay all of the expenses that the defendant incurred in connection with the litigation. However, we must be careful not to unduly restrict vigorous private enforcement of our civil rights laws in pursuing the goal of deterring frivolous suits; Congress struck a fine balance between these two goals which we shall not upset by placing our thumbs too heavily on the scales of one side or the other. *Cf. Christiansburg Garment,* 434 U.S. at 422, 98 S.Ct. at 700. Accordingly, a defendant should pay its own fees in a Section 1983 suit that are as much a result of its own inaction as the plaintiff's unreasonableness.

Defendants submitted the following itemization of hours expended:

| | |
|---|---|
| Initial review of file, investigation, research, answer to amended complaint | 3 hours |
| Discovery: answers to interrogatories, deposition of plaintiff | 7 hours |
| Court appearances | 3 hours |
| Preparation of pretrial order | 5 hours |
| Preparation of summary judgment motion and memorandum | 4 hours |
| | 22 hours |

 In its order granting fees, the district court stated, "[P]laintiff did not have a colorable claim under well-settled case law, and there are no good faith arguments for a change of existing law ... One hour of research before the case was filed would have revealed that the claim was barred by absolute prosecutorial immunity." If one hour of research would have been sufficient to satisfy a reasonable plaintiff that filing suit was pointless, we question why defendants expended so much time in disposing of this case.[7] Immunity, the

---

**6.** Indeed, absent an appropriate motion from a defendant, a district court may generally be without power, acting on its own, to terminate frivolous cases that are being actively prosecuted.

**7.** Indeed, the more time and effort a defendant spends in defending a Section 1983 case, the less likely it is that the case was frivolous and that a fee award is appropriate in the first place.

grounds for concluding that this suit is frivolous, appears on the face of the complaint, and defendants raised this defense in their answer. Defendants filed no affidavits or other documents in support of their motion for summary judgment. There appears to have been no need to depose plaintiff or to spend time preparing a pretrial order on the assumption that the case would go to trial.[8] To the extent that this case is frivolous, it is so because at the time the suit was filed the state of the law, as matched against the allegations in plaintiff's complaint, made it so. It is not frivolous because of facts, known by plaintiff, that defendant could only discover in the natural course of litigation. *See Hermes v. Hein,* 742 F.2d at 357–58. There was no possibility that either party would uncover facts to somehow abrogate the immunity defense to plaintiff's allegations. *Cf. Hudson v. Nabisco Brands, Inc.,* 758 F.2d 1237, 1244 (7th Cir.1985). Prosecutorial immunity for activities arising out of judicial proceedings is absolute. *Imbler,* 424 U.S. at 427–30, 96 S.Ct. at 993–94.

■■■ While we find no fault with the district court's determination that the amount of time spent for each task presented in defendants' bill of costs was reasonable, the district court did not address the question whether the work was appropriately performed in the first in-

stance. Even before *Hensley,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), we have remanded fee decisions where the relationship between the work compensated in the award and the success of the party was not clear from the district court order. *See Freeman v. Franzen,* 695 F.2d 485, 494 (7th Cir.1982), *cert. denied,* 463 U.S. 1214, 103 S.Ct. 3553, 77 L.Ed.2d 1400 (1983); *Sanchez v. Schwartz,* 688 F.2d 503, 506–07 (7th Cir.1982). We must do so once again in the present case.

■■■ As noted above, parties are allowed fees only for time related to issues upon which they have substantially prevailed, *see Illinois Welfare Rights Organization v. Miller,* 723 F.2d 564, 566–67 (7th Cir.1983), yet it is difficult to imagine how time spent deposing plaintiff is related to the immunity doctrine that terminated this case. Similarly, we question whether any reasonable view of this litigation will support an award of attorneys' fees for preparation of a pretrial order that included a list of issues to be tried, when absolute immunity meant that there were no triable issues.[9] Because the timing and purpose of the court appearances are unclear, we cannot say on this record whether or not the district judge abused his discretion in awarding fees for them. On the other hand, review of the complaint, brief investigation, research and filing an an-

---

8. We do not mean to imply that defendants should have disregarded the rules of discovery, other rules of civil procedure, or the rules of the Northern District of Illinois to avoid attorney costs. On the contrary, we fault defendants for failing to promptly follow the orderly procedures provided by the rules to defeat such a baseless suit.

9. In addition, defendants submitted a bill for $177.20, to cover the cost of transcribing plaintiff's deposition testimony. Although we conclude that defendants are not entitled to attorneys' fees under § 1988 for deposing plaintiff, we uphold the award of transcript costs. While it is true that the transcript must be "necessarily obtained for use in the case," 28 U.S.C. § 1920(2), we stated, in *Hudson v. Nabisco Brands, Inc.,* 758 F.2d 1237 (7th Cir.1985):

> We can conceive of few, if any, situations in which a defendant's costs from taking a plaintiff's deposition in a *private suit* between indi-

vidual litigants would not be reasonably necessary for use in a case. If a case is so meritless that it is unnecessary to depose the claimant, then there is strong support for requiring the claimant to bear the financial burden of having brought the case.

*Id.* at 1244 (emphasis added). One might conclude, in light of the discussion in the text, that this case is very close to the improbable suit hypothesized by the *Hudson* panel. However, transcript fees are costs, *see* 28 U.S.C. § 1920(2), which are taxed to the losing party as a matter of course, without regard to the nature of the suit, *see* Rule 54(d), Fed.R.Civ.P. On the other hand, a prevailing defendant in a Section 1983 action ordinarily pays its own attorneys' fees except under the special circumstances outlined in the text. Consequently, we find no inconsistency in denying deposition-related attorneys' fees under Section 1988, but allowing transcript costs under Section 1920(2).

swer would be appropriate regardless of the nature of the suit; compensation for this time is undoubtedly justified. Finally, the time spent preparing the summary judgment motion is properly compensated. Defendants did not file extraneous material in support of their motion but relied on the legal arguments that finally terminated the litigation. The award of attorneys' fees for this effort was most likely proper.

The decision of the district court is VACATED AND REMANDED FOR FURTHER FINDINGS.