**Randolph WILLIAMS, Plaintiff-Appellant,**

v.

**H. Wayne KOBEL, Donald Blankenship, and Paul A. O'Neal, Defendants-Appellees.**

**No. 84–2090.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 29, 1985.

Decided April 16, 1986.

As Amended April 23, 1986.

Rehearing and Rehearing En Banc Denied June 20, 1986.

---

Ripple, Circuit Judge, filed opinion concurring in part and dissenting in part.

Ellen M. Babbitt, Butler, Rubin, Newcomer, Saltarelli & Boyd, Chicago, Ill., for plaintiff-appellant.

Kurt P. Froehlich, Evans & Froehlich, Champaign, Ill., Steven R. Fran, Johnson, Frank, Frederick & Walsh, Urbana, Ill., for defendants-appellees.

Before COFFEY, EASTERBROOK and RIPPLE, Circuit Judges.

COFFEY, Circuit Judge.

The plaintiff appeals the district court's grant of summary judgment and award of attorneys' fees to the defendants on his Section 1983 claim that he was arrested without a warrant and without probable cause in violation of his constitutional rights. We affirm.

## I.

This litigation arose out of the plaintiff's arrest without a warrant for an arson involving a death in Champaign, Illinois on January 2, 1980. At 2:50 a.m., John Lockard, a police officer with the City of Urbana, Illinois,[1] was patrolling in the area of a Derby gas station when he observed the plaintiff standing at the rear of a blue Mercedes-Benz automobile. The officer circled the gas station because it appeared to Officer Lockard that the plaintiff was filling a container or containers in the trunk of the car with gas. After circling the service station, the officer drew closer to the Mercedes automobile and noted that the plaintiff had removed the nozzle from the rear trunk area and at this time had inserted the gas nozzle in the car's gas tank. Officer Lockard also noticed that the car had only one Illinois license plate[2] and, concerned about the missing plate, called the police dispatcher to check the license registration number. The dispatcher informed Officer Lockard that the license plate identification number belonged to a Mercedes-Benz registered to Randolph Williams, the plaintiff in this action. Sometime later, the dispatcher again contacted Officer Lockard and reported that the College Hall Apartments, a building owned by Williams, the plaintiff, was reported on fire at 3:20 a.m. Officer Lockard immediately recounted his observations of Williams' actions at the gas station a short time before,

and after writing a preliminary report at the Urbana Police Department concerning Williams' suspicious actions at the gas station, was directed to return to the Derby gas station, located approximately one mile from the College Hall Apartments. Lockard interviewed the attendant on duty, who remembered the transaction with Williams and informed Lockard that Williams' bill was $23.00. Since the price of the gas was $1.05 per gallon, Lockard calculated that Williams purchased approximately 22 gallons of gasoline, an amount Lockard believed to be greater than the capacity of a 1966 Mercedes' gas tank.[3] Lockard reported his findings concerning Williams' purchase of gasoline in excess of a 1966 Mercedes' gallon capacity to Detective Wayne Kobel.

Sometime between 4:00 and 5:30 a.m., the plaintiff was observed at the scene of the fire by a Sergeant Frye, an officer with the Champaign Police Department. Sergeant Frye, who has coordinated and performed investigations and control duties at over 100 fire scenes in his 20 years with the department, was one of the first officers at the fire scene at approximately 3:30 a.m. Sergeant Frye was convinced that the fire was in all probability caused by an arsonist, based upon the extent of the building's involvement in flames, the heat of the fire, the color of the flames and smoke, and an extensive bulge in one of the building's walls (indicating an explosion). At 4:00 a.m. on the same morning, Sergeant Frye was contacted by a Sergeant Neuman, who related Officer Lockard's observation of Williams at the gas station an hour and a half earlier at 2:50 a.m. Sergeant Neuman, who was knowledgeable about the owners of rental and commercial property, informed Sergeant Frye that Williams either owned or had an ownership interest in the burning building and that

---

1. Champaign, Illinois and Urbana, Illinois are neighboring cities. The record reveals that an intergovernmental association, METCAD (Metropolitan Computer Aided Dispatch), coordinated the fire and crime control activities of the Champaign and Urbana officers involved in this suit.

2. The State of Illinois requires all automobiles to display two license plates.

3. A later investigation proved Lockard's belief to be correct; a Mercedes dealer informed an officer that the capacity of the Mercedes' tank was 17.2 gallons.

the building was about to be sold at a foreclosure sale that day. Sergeant Neuman requested Sergeant Frye to be on the lookout for Williams. Sometime between 4:00 and 5:30 a.m., Sergeant Frye observed the plaintiff, Williams, calmly and casually walking around the perimeter of the fire scene. Williams' calmness seemed to Frye to be somewhat unusual because in his prior fire investigations, he observed that owners typically identify themselves, ask for information, express concern about the building, its occupants and their safety as well as the contents of the building, and volunteer any and all types of information about the structure and the inhabitants. Based upon the totality of the circumstances, including but not limited to his belief that the fire had an incendiary origin (based upon the extent of the building's involvement in flames, the heat of the fire, the color of the flames and smoke, and the extensive bulge in one of the building's walls); the report of Williams' actions, including his conduct at the gas station; Williams' ownership of the building; the impending foreclosure sale; and Williams' calmness at the fire scene, Sergeant Frye concluded that he had probable cause to arrest Williams for arson. Before making the actual arrest, Sergeant Frye decided to review the information about Williams and the Mercedes-Benz automobile and ordered Officer Lockard to report to the fire scene.

Officer Lockard arrived at the fire and observed Williams and the same Mercedes automobile he had previously seen at the gas station. At this time Williams was wearing a coat other than the coat he had on at the gas station. Lockard reported to Detective Kobel, a defendant in this action that the Mercedes at the fire scene was the same Mercedes he had seen at the gas station, that Williams was the man he had observed at the gas station, and that Williams had changed his coat since leaving the gasoline service station. Based upon his knowledge of the approximate distance between the Derby gas station and the burning building, Detective Kobel concluded that Williams might very well have driven from the Derby gas station to the Col-

lege Hall Apartments and had ample time to set the fire between the time of his presence at the gas station and the report of the fire. Detective Kobel, after reviewing and analyzing all the information concerning Williams and the fire, conferred with defendant Lieutenant Paul O'Neal, defendant Officer Donald Blankenship, Sergeant Frye and other officers, concluded that probable cause existed, and arrested Williams at 5:45 a.m.

Later that day, fire department investigators inspected and searched the burned-out building and discovered a body later determined to be a resident of the building believed to have been killed in the conflagration. The investigators also discovered a five-gallon metal can containing a liquid that smelled like gasoline, possibly used to ignite the fire.

Williams was charged with aggravated arson and murder and a preliminary hearing was held on January 7, 1980. After listening to the State's evidence, the judge found that the State had failed to produce sufficient evidence to establish probable cause to bind Williams over to trial for the crimes of aggravated arson and murder:

"The Court simply does not believe that the evidence that has been presented at this particular hearing is sufficient to satisfy the second portion of the People's burden which is to show evidence that the Defendant, not to the exclusion of everyone else in the world and not to a preponderance of the evidence or a reasonable doubt, but that the Defendant committed the offense. The Court believes that the gaps between the evidence are simply too much for the Court to bridge at this particular hearing so the entry is going to be: Witnesses sworn, evidence heard. Finding by the Court that there is insufficient evidence to establish probable cause to conclude that the Defendant committed an offense as charged in the Information."

After the Court dismissed the charges against Williams, he filed a civil suit seeking damages in the United States District

Court for the Central District of Illinois, contending that the defendants arrested him without a warrant and without probable cause in violation of his constitutional rights and his civil rights under 42 U.S.C. § 1983. The defendants filed a motion for summary judgment, arguing that they had probable cause to arrest Williams on January 2, 1980, and that they had acted in good faith. In support of their motion, the defendants submitted, *inter alia*, affidavits from Officers Lockard, Frye and Kobel relating the events at the gas station and at the fire scene on January 2.

In his counter-affidavit, Williams responded to Lockard's testimony concerning the gas station in two paragraphs:

"7. At no time on January 2, 1980 did Officer John Lockard or any other police officer see, [sic] me in any gas station in Champaign County, Illinois with a gasoline nozzle in the trunk of my automobile.

8. At no time on January 2, 1980 did I have a gasoline nozzel [sic] in the trunk of my car to fill containers with gasoline."

Williams also filed a motion for summary judgment on the issue of liability in which he asserted that there was "no triable issue of material fact." The district court granted the defendants' motion for summary judgment finding that, "Of the many elements which aggregate to constitute probable cause concerning the arrest for arson for which the plaintiff complains, the only matter which the plaintiff attempted at all to controvert was that John Lockard, an Urbana Police Officer, did not see him putting gasoline into containers in the trunk of his car at 2:50 a.m." The district court judge noted that the plaintiff, Williams, admitted in a stipulation filed with the court that Officer Lockard saw the plaintiff and his car at the Derby gas station shortly before the fire, further noted that the plaintiff stated in his motion for summary judgment that there "is no triable issue of material fact," and granted summary judgment to the defendants. Following the grant of summary judgment, the defend-

ants filed a motion to amend the judgment so that they might receive attorneys fees. The court found:

"That this action was filed February 21, 1984, that ample time and opportunity were available to the plaintiff for discovery, and that the plaintiff had available to him, through one or more of his past attorneys, the records of the Champaign Police and Fire Departments, related to the fire for which he was arrested and complains in this action, and the statements, stipulations and representations of his attorneys, and the defendants' attorneys concerning the issues with respect to which this action will be tried. The court finds that he had available the Champaign Police and Fire Department records for about four years, and the pretrial statements, stipulations and representations of counsel for about two years. In view of the foregoing, which should have made him aware of the relative merit of this case, on April 20, 1984 (five days before the scheduled trial in this action), at the hearing on the Defendants' Motion for Summary Judgment, the plaintiff only attempted to raise an issue of fact concerning one element of the many that constitute probable cause for the arrest of which the plaintiff here complains. Further, the attempt to raise that issue of fact was in the face of the Plaintiff's Motion for Summary Judgment on Issue of Liability, which stated that there was 'no issue of material fact.' "

The judge concluded that the plaintiff's action was "frivolous, unreasonable, or without foundation" and awarded the defendants $22,090 in attorneys fees plus costs. Williams appeals both the grant of summary judgment and the award of attorneys fees.

## II.

### A. Summary Judgment

### 1. The Effect of the Preliminary Hearing Determination of No Probable Cause

██ Initially we address the question of whether the court's finding of no probable

cause to bind over for trial made after the preliminary hearing resolves the issue of whether the defendants had probable cause to arrest Williams. *Cf., Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Guenther v. Holmgreen*, 738 F.2d 879, 889 (7th Cir.1984); *Whitley v. Seibel*, 676 F.2d 245 (7th Cir.1982). Our first inquiry is whether the judge in the preliminary hearing clearly determined whether the defendants had probable cause to make the warrantless arrest of Williams on January 2, 1980. "The purpose of the preliminary examination [pursuant to the Illinois preliminary hearing statute] is to judicially determine if there is probable cause to hold the accused for trial, to inform him of the charges against him, fix bail, and perpetuate testimony." Ill.Rev.Stat. ch. 38 § 109 *et seq.*, Committee Comment-1963. The probable cause determination made by the judge is whether there is probable cause to believe an offense has been committed by the defendant: "The judge shall hold the defendant to answer to the court having jurisdiction of the offense if from the evidence it appears there is probable cause to believe an offense has been committed by the defendant." *Id.* at § 109–3(a). Initially we note that the statute does not require the judge to evaluate the presence or absence of probable cause at the time of arrest; absent a motion challenging the validity of the arrest, the presiding judicial officer bases the probable cause to bindover determination on evidence exclusively presented at the hearing and does not and should not consider the separate issue of whether there was probable cause to arrest the defendant unless the defendant specifically raises the issue. In other words, the judge will not address the issue of whether the officers had probable cause to arrest the defendant unless the defendant files a motion challenging the legality of the arrest. Furthermore, commentators have noted that, "[c]ourts in many jurisdictions have not spoken with clarity on the question of exactly what the term 'probable cause' is intended to mean in [the] context [of a preliminary hearing]." 2 LaFave & Israel, Criminal Procedure § 14.3(a) (1984).

While some courts have equated the preliminary hearing probable cause determination with the Fourth Amendment probable cause standard for a lawful arrest, others have required the prosecutor to "make out a prima facie case, that is, whether there is evidence which, if unexplained, would warrant conviction by the jury." *Id.* at 256. Moreover, because the probable cause determination after a preliminary hearing is made during a legal proceeding incorporating all the safeguards of evidentiary rulings as in a trial, it is an entirely separate legal proceeding distinct from the probable cause judgment to arrest made by the police officer in the field:

> "[T]he arrest standard, directed primarily at the police, is understandably expressed in terms of 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act,' while the charging decision being reviewed at the preliminary hearing is, by its nature, one involving the 'legal technicians' of the prosecutor's office. *Moreover, under the arrest standard considerable uncertainty must be tolerated on occasion because of the need to allow the police to take immediate affirmative action in ambiguous circumstances, but no comparable exigencies are present at the time the charging decision must be made.* These distinctions would suggest, for example, that there is good reason to be more demanding at the preliminary than at arrest on the question of whether a crime has occurred. *Arrests must be made even when there is considerable uncertainty on that score,* but (as at least some jurisdictions have recognized) there is no reason why this aspect of the case cannot be made much more certain by the time of the preliminary hearing."

*Id.* at 258 (citations omitted) (emphasis added); *see, e.g., State v. Williams*, 47 Wis.2d 242, 249, 177 N.W.2d 611 (1970) ("Probable cause for an arrest is less than that required for a bindover and is less than the quantum of evidence necessary for a criminal conviction."); *State v. Knoblock*, 44

Wis.2d 130, 134, 170 N.W.2d 781 (1969). Thus, the actual probable cause to bindover determination made by the state judge at a preliminary hearing before the criminal trial employs a stricter standard of proof, including evidentiary rulings, than a review of the officers' actions and the probable cause to arrest. A finding of no probable cause at a preliminary hearing, therefore, may very well be made, and often is made, even though there *was* probable cause to arrest the defendant.

Moreover, the Illinois Preliminary Hearing Statute (Ill.Rev.Stat. ch. 38, § 109–1 et seq.), the cases interpreting it, and the Record of Proceedings of the Sixth Illinois Constitutional Convention ("Proceedings") fail to discuss the question of different standards of review for arrests and the establishment of probable cause to bind-over for trial. The Illinois cases reviewed neither specify the quantum of proof required to demonstrate probable cause in a preliminary hearing nor compare the preliminary hearing probable cause determination to the amount of evidence necessary to establish probable cause for arrest; rather, the cases either state that the court must find probable cause to institute criminal proceedings; *see,. e.g., United States ex rel. Bonner v. Pate,* 430 F.2d 639 (7th Cir. 1970); *People v. Franklin,* 80 Ill.App.3d 128, 35 Ill.Dec. 121, 398 N.E.2d 1071 (1979); or recite the statutory language that there must be "probable cause to believe an offense has been committed by the defendant." *See, e.g., People v. Wilson,* 132 Ill.2d 537, 270 N.E.2d 88 (1971); *People v. Bonner,* 37 Ill.2d 553, 229 N.E.2d 527 (1967); *People v. Morris,* 30 Ill.2d 406, 197 N.E.2d 433 (1964). A review of the debate over the adoption of Article I, § 7 of the Illinois Constitution, requiring a preliminary hearing in all cases unless the initial charge was brought by a grand jury indictment, revealed only one reference to the quantum of proof of probable cause required in the preliminary hearing:

"Now I think that particularly the attorneys among us who have had any criminal practice at all, either as prosecution or defense, know that it is not incumbent upon the state to prove its case in a preliminary hearing beyond any reasonable doubt, but simply to show whether or not there is probable cause, in other words, that *a crime has been committed and there is reason to believe that this accused committed the crime."*

III Proceedings 1472 (Remarks of Mr. Butler) (emphasis added). Furthermore, several delegates believed the preliminary hearing provided the defendant an opportunity to test the prosecution's evidence through cross-examination. *See id.* at 1453, 1454, and 1472. Because the probable cause determination in a preliminary hearing is made in a judicial proceeding with all its evidentiary rulings and involves an adversarial test of the prosecution's evidence, it is clear to us that the probable cause determination at the preliminary hearing is far more stringent and far more concerned with legal technicalities than the probable cause determination made by an arresting officer at the scene of an arrest immediately after the commission of a crime.

■ Turning to the facts of this case, we note that the state judge dismissed the charges against Williams because:

"The Court simply does not believe that the evidence that has been presented at this particular hearing is sufficient to satisfy the second portion of the People's burden which is to show evidence that the Defendant, *not to the exclusion of everyone else in the world and not to a preponderance of the evidence or a reasonable doubt,* but that the Defendant committed the offense. The Court believes that the gaps between the evidence are simply too much for the court to bridge at this particular hearing...."

(emphasis added). Initially we note that the Court's enunciation of the State's burden ("to show evidence that the Defendant, not to the exclusion of everyone else in the world and not to a preponderance of the evidence or a reasonable doubt, but that the Defendant committed the offense") is confused, ambiguous and appears to apply a stricter burden of proof than the statute mandates (probable cause to believe a

crime has been committed and that this accused committed the crime). Furthermore, a review of the record of Williams' preliminary hearing fails to reveal that Williams either filed a motion or much less presented an argument raising the issue of whether the officers had probable cause to arrest. Indeed, the judge under Illinois law was not required to address specifically the question of whether the officers had the probable cause to arrest the defendant unless the defendant filed a motion challenging the arrest. We are convinced from our review of the legislative history and of the preliminary hearing statute that the probable cause standard to bindover for trial in Illinois preliminary hearings is more stringent than the probable cause to arrest standard in Illinois. We hold that the issue of whether the defendants had probable cause to arrest Williams was not even at issue before the preliminary hearing court and therefore was not addressed by the court.

Furthermore, a review and evaluation of the statutory scheme and of the record reveals that the arresting officers did not have a full and fair opportunity in the preliminary hearing to litigate the issue of whether they had probable cause to arrest Williams. *Cf., Allen,* 449 U.S. at 95, 101 S.Ct. at 415; *Garza v. Henderson,* 779 F.2d 390, 392–94 (7th Cir.1985); *County of Cook v. Midcon,* 773 F.2d 892, 898–99 (7th Cir.1985). The record reveals that the State's case was presented by the prosecuting attorney who, in an attempt to avoid revealing his entire case to the defendant, to save time, to minimize the use of precious court time, and to save witnesses from testifying on more than one occasion, presented only the minimum amount of evidence required for the court to find that the defendant in all probability committed a crime. The arresting officers were not parties to the litigation in the preliminary hearing. Indeed, the defendants point out that, "they had no attorneys representing them in it, they had no tactical control over the prosecution, its preparation, selection of witnesses or its presentation.... The defendants are in no position to question

the State's Attorney's tactics and strategies or the State's Attorney's efforts to 'marshal enough evidence' as to the plaintiff." And, generally, experienced prosecuting attorneys present only the minimum amount of evidence at a preliminary hearing and steer clear of a defendant's fishing expedition to prepare a defense. Moreover, the officers allege that the State's Attorney failed to call them as witnesses at the preliminary hearing. We hold that in a § 1983 action challenging probable cause in a warrantless arrest that a finding of no probable cause at the preliminary hearing does not resolve the issue of whether or not probable cause existed for the arrest in the view of the fact that that issue is not properly before the court in the absence of a specific motion challenging probable cause for arrest. In the instant case, it is evident from the record that the defendant officers did not receive their full panoply of rights in that they were given no opportunity to challenge the testimony and/or Williams' statements much less given the opportunity to present any evidence on their own behalf as to the issue of whether they had probable cause to arrest Williams.

### 2. Probable Cause to Arrest

■ We turn now to the question of whether the federal district court judge in the Section 1983 action correctly determined that the officers had probable cause to arrest Williams for arson. "[P]roof of the actual existence of probable cause is an absolute bar to the 1983 action [regardless] of the lack of good faith of the arresting police officer." *Moore v. Marketplace Rest. Inc.,* 754 F.2d 1336, 1344 n. 10 (7th Cir.1985). "Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that 'an offense has been or is being committed.'" *Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949) (brackets in original).

"In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men not legal technicians, act. The standard of proof is accordingly correlative to what must be proved."

*Id.* at 175, 69 S.Ct. at 1310. Probable cause "is to be viewed from the vantage point of a prudent, reasonable, cautious police officer on the scene at the time of the arrest guided by his experience and training." *United States v. Davis,* 458 F.2d 819, 821 (D.C.Cir.1972); *see also United States v. Ortiz,* 422 U.S. 891, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1975); *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948). As our recitation of the facts reveals, the officers had reasonable grounds to believe that at the time they arrested Williams for arson that the fire probably was of incendiary origin; that Sergeant Neuman had informed the officers that Williams either had an ownership interest in or owned the burning building and that the building was to be sold in a foreclosure sale later that day; that shortly before the fire Williams was observed at a gas station where he purchased more gasoline than the tank of his Mercedes automobile could hold, looked about furtively, and appeared to pump gasoline into a container or containers in the trunk of his car; that in the period of time between his appearance at the gasoline station and the first report of the fire, Williams could have driven from the Derby gasoline station to the College Hall Apartments and ignited the fire; that Williams changed his coat and was wearing a different coat from the coat he had worn at the gasoline station when he was observed at the fire scene; and, that Williams was unusually calm at the scene of the fire. In sum, we are convinced that the officers knew or had reason to believe that the crime of arson had been committed and that Williams' actions were not only consistent with a motive and an opportunity to start the fire after leaving the gas station but he also appeared to possess all the indicia of committing the crime—i.e., gasoline. In the face of all of this evidence, Williams did not deny that the fire had an incendiary origin or that he had a motive for setting the fire but attempted only to rebut the statements of Officer Lockard by submitting a self-serving affidavit stating:

"7. At no time on January 2, 1980 did Officer John Lockard or any other police officer see, [sic] me in any gas station in Champaign County, Illinois with a gasoline nozzle in the trunk of my automobile.

8. At no time on January 2, 1980 did I have a gasoline nozzel [sic] in the trunk of my car to fill containers with gasoline."

We note that Williams did not deny purchasing more gasoline than the capacity of the tank of his 1966 Mercedes Benz and merely denied Officer Lockard's statement that he saw Williams with a gasoline nozzle in his trunk and denied having a gasoline nozzle in the trunk to fill containers with gasoline. Furthermore, Williams failed to explain how he stored the excess five gallons of gasoline. Indeed, Williams' affidavit fails to address the "coincidence" that the gas container later found at the fire scene had a five gallon capacity, the exact amount of the overage. Thus, we concur in the district court's finding that, "any issue raised or attempted to be raised by the plaintiff concerning only what Officer Lockard saw or might have seen at the time specified, is not material." A judgment on a summary judgment motion, "shall be rendered ... if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Based on the evidence and the knowledge these experienced and well trained police officers possessed at the time they made the well reasoned judgment to arrest Williams, we hold that they had more than sufficient evidence to establish that they had probable cause to

make the arrest. Accordingly, we affirm the district court's grant of summary judgment in favor of the defendants.

### B. Attorneys Fees

A prevailing defendant is entitled to attorneys fees under the Civil Rights Attorneys' Fees Awards Act, 42 U.S.C. § 1988 if the plaintiff's suit was "frivolous, unreasonable, or without foundation, or if the plaintiff continued to litigate after it clearly became so." *Eichman v. Linden & Sons, Inc.*, 752 F.2d 1246, 1248 (7th Cir. 1985); *Curry v. A.H. Robbins Co.*, 775 F.2d 212, 219-20 (7th Cir.1985). "[T]he term 'meritless' is to be understood as meaning groundless or without foundation, rather than simply that the plaintiff has ultimately lost his case, and that the term 'vexatious' in no way implies that the plaintiff's subjective bad faith is a necessary prerequisite to a fee award against him." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978). "Attorneys' fee awards under 42 U.S.C. § 1988 rest within the sound discretion of the trial court and this court will not disturb an award of attorneys' fees under § 1988 unless the district court abuses its discretion." *Curry.* At 219. "In reviewing such an award, this court will consider whether the district court properly applied the *Christiansburg* factors and whether the court's findings as to those factors are supported by the record." *Hamilton v. Daley*, 777 F.2d 1207, 1212 (7th Cir.1985). The plaintiff advances three arguments in support of his contention that the district judge failed to properly apply the *Christiansburg* factors (whether the plaintiff's action was frivolous, unreasonable, or without foundation): (1) because the state judge found no probable cause at the preliminary hearing, "Williams' assumption that the police had no probable cause to arrest cannot be deemed objectively or subjectively in bad faith or frivolous;" (2) the district court judge engaged in a "hindsight" analysis of the case; and (3) the judge penalized Williams for failing to engage in discovery.

As we explained above, the record of the preliminary hearing reveals that the state judge properly failed to address specifically the issue of whether the officers had probable cause to arrest Williams. Moreover, in arguing that his "assumption" was not "in bad faith or frivolous," Williams asserts that he did not file his action in subjective bad faith. However, the Supreme Court has held that a defendant does not have to prove that a plaintiff acted in subjective bad faith to recover attorneys fees in a civil rights suit. *Christiansburg*, 434 U.S. at 421, 98 S.Ct. at 700. As to Williams' claims that the judge engaged in "hindsight" analysis and penalized him for failing to engage in discovery, we note that Judge Morgan specifically relied on the fact that the plaintiff had the records of the Champaign Police and Fire Department for four years and the pre-trial statements, stipulations and representations of counsel for approximately two years. Judge Morgan expressly held that this material, "should have made him aware of the relative merits of his case." Contrary to the plaintiff's contention that the trial court engaged in post-hoc reasoning and penalized him for failing to engage in discovery, the judge in fact held that the plaintiff continued to litigate after the meritless nature of his case became clear. A prevailing defendant is entitled to attorneys fees if the plaintiff's suit was frivolous, unreasonable, or without foundation, or if the plaintiff continued to litigate after it clearly became so. *Eichman*, 752 F.2d at 1248. We hold that the district court judge did not abuse his discretion in awarding attorneys fees because the plaintiff continued to litigate after it became clear that his suit was without foundation.

The decisions of the district court are AFFIRMED.

RIPPLE, Circuit Judge, concurring in part and dissenting in part.

I concur with the majority's conclusion that summary judgment was appropriate. However, I write separately because I believe that a good portion of its analysis is

unnecessary. I also do not believe that the imposition of attorneys' fees on the plaintiff, in this case, is compatible with Congress' intent when it enacted 42 U.S.C. § 1988.

Summary judgment is appropriate when there remains no unresolved issue of material fact or the party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The plaintiff alleged that the defendants deprived him of his constitutional rights when they falsely arrested him. Probable cause to arrest bars a section 1983 action based on false arrest. *Moore v. Marketplace Restaurant*, 754 F.2d 1336, 1344 n. 10 (7th Cir.1985). I agree with the majority, the defendants' affidavits in support of their motion for summary judgment established that they had probable cause to arrest Mr. Williams. The plaintiff's affidavit did not rebut any of the facts that constituted the bases of probable cause. Therefore, no issue of material fact remained unresolved and summary judgment was appropriate. *See Strutt v. Upham*, 440 F.2d 1236, 1237 (9th Cir.1971).

On appeal, the plaintiff has not argued that he is entitled to summary judgment based on the state court's finding of no probable cause to bind over. Therefore, this court is not faced with the question of whether the state court finding should be given offensive collateral estoppel effect. Consequently, the court need not engage in the lengthy analysis comparing the standards for determining probable cause to bind over in Illinois with the definition of probable cause to arrest.

There is another compelling reason why we should not undertake this gratuitous analysis. The majority's opinion quite properly indicates that the law in Illinois on these issues is not clear. Federal courts already make too much state law. This is an unfortunate by-product of our diversity jurisdiction where we are often required to apply state law with very little guidance from the state courts or the legislatures. The federal court's interpretation and application then influences the future direction of state law. We should refrain from commenting on or interpreting state laws or procedures unless such an analysis is essential to resolving the issue in the case. Here, the majority's discussion of the collateral estoppel effect of the state court finding of probable cause to bind over requires a decision on an unresolved issue of state procedure and is unnecessary to a resolution of the case. Therefore, we should refrain from gratuitously affecting the content of state law.

The majority also affirms the district court's decision to award attorneys' fees to the defendants in this case. Congress granted the district courts discretionary power to award attorney's fees to the prevailing party in a section 1983 action. 42 U.S.C. § 1988. In providing for attorney's fees, Congress intended to encourage private litigants to serve the public interest by bringing suit to vindicate civil rights. S.Rep. No. 1011, 94th Cong., 2d Sess. 2, *reprinted in* 1976 U.S.Code Cong. & Ad. News at 5908, 5910; *see Hamilton v. Daley*, 777 F.2d 1207, 1211 (7th Cir.1985). The Supreme Court has interpreted section 1988 as also permitting prevailing defendants to recover attorney's fees. However, to ensure that the original congressional intent behind section 1988 is not thwarted, "prevailing defendants are not entitled to fees on the same basis as prevailing plaintiffs." *Hamilton*, 777 F.2d at 1212. Defendants may recover attorney's fees from the plaintiff only if "the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in bad faith." *Hughes v. Rowe*, 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980). Although we review the district court's decision for abuse of discretion, *Munson v. Friske*, 754 F.2d 683, 696 (7th Cir.1985), the court must be sure that the record reflects a frivolous, groundless suit.

At least one factor in this case prevents the suit from being frivolous or groundless. The essential element in Mr. Williams' section 1983 claim was the lack of probable cause to arrest. Mr. Williams knew, at the time that he filed suit, that a state judge had found no probable cause to detain. No

amount of discovery would have altered the fact that the state judge had reached this conclusion. It was not frivolous, groundless or unreasonable for Mr. Williams to file suit and to continue the action until he received a judicial determination that probable cause to arrest did in fact exist. As noted in *Hamilton,* 777 F.2d at 1212, "[t]here is no question that the stakes are high in fee cases." This court should not routinely sanction fee awards to prevailing defendants. Such a practice will discourage plaintiffs from bringing suit to vindicate their civil rights. Fees to prevailing defendants must be awarded cautiously to preserve Congress' intent when they provided for such awards. In my view, the district court abused its discretion by awarding attorneys' fees in this case.