Simon F. LUKOS, Plaintiff,

v.

Officer H. BETTENCOURT, Officer Girouard and Sergeant Sheehan, Defendants.

No. 3:97 CV 1586(GLG).

United States District Court, D. Connecticut.

Sept. 18, 1998.

substantial risk of imminent physical injury by the patient to himself...." Conn.Gen.Stat. § 52–146f(2).

John R. Williams, Williams, Polan & Pattis, New Haven, CT, for Plaintiff

Joseph J. Packtor, Carmody & Torrance, Waterbury, CT, Marcia J. Gleeson, Sack, Spector & Barrett, West Hartford, CT, For Defendant.

### MEMORANDUM DECISION

GOETTEL, District Judge.

■ In this section 1983 civil rights action, the plaintiff alleges that his arrest by defendants without a warrant and without probable cause violated his Fourth Amendment rights. Defendants, Watertown police officers, who have been sued only in their individual capacities, have moved for summary judgment on the grounds that there is no genuine issue of material fact that there was probable cause for the arrest, and that they are entitled to qualified immunity. For the reasons set forth below, their motion for summary judgment (Doc. No. 19) is **GRANTED.**

The material facts necessary to decide this motion are not in dispute.

The plaintiff had hired Anthony Bonacassio to do some minor landfill work at plaintiff's residence in Watertown. When Bonacassio completed the work, he sought payment. The plaintiff refused to pay him, stating that the work had not been completed and requested that additional work be performed. Bonacassio told him that he would do that work only if paid an additional $50. The plaintiff refused to pay that amount as well as the original $150 requested by Bonacassio. A heated dispute then broke out between the two. The Watertown police were called by the plaintiff. The plaintiff told them that Bonacassio had threatened to tear down his house if he was not paid.[1] Bonacassio denied having said this. Bonacassio claimed that plaintiff had pushed him causing him to fall back.

The police attempted unsuccessfully to mediate this dispute. When it was apparent

---

1. Plaintiff also now claims that Bonacassio had pushed him. The police report filed on that day makes no mention of such an accusation. For purposes of this motion we assume that Bonacassio did push the plaintiff but that fact is not material to a determination as to whether the plaintiff should have been charged. It merely gives an additional reason for the arrest of Bonacassio.

that the matter could not be resolved, the police gave each of the participants a misdemeanor summons charging disorderly conduct.[2] Bonacassio signed his summons promising to appear in court on the scheduled date. The plaintiff, however, refused to sign his and was told that if he failed to do so the police would be required to take him into custody. Nevertheless, the plaintiff continued to refuse to sign the agreement to appear in court and, thus, was taken into custody. After a few hours at the police station where his charge was processed, he relented and signed the promise to appear in court and was released. As so often happens in this sort of minor dispute, the charges against both parties were eventually dismissed.

*Probable Cause for the Arrest*

■ Plaintiff claims that there were no exigent circumstances justifying his arrest for disorderly conduct without a warrant. Connecticut General Statutes § 54–1f(a) provides that the police department "shall arrest, without previous complaint and warrant, any person for any offense in their jurisdiction, when the person is taken or apprehended in the act or on speedy information of others." *See State v. Kuskowski*, 200 Conn. 82, 86, 510 A.2d 172 (1986). This statute "requires an arresting officer to believe that he has received speedy information of the commission of an offense in order to make an arrest without a warrant." *Beinhorn v. Saraceno*, 23 Conn.App. 487, 492, 582 A.2d 208 (1990).

■ Of course, a warrantless misdemeanor arrest must be supported by probable cause. *State v. Santiago*, 224 Conn. 494, 498, 619 A.2d 1132 (1993). It is clear that probable cause for an arrest is established when the arresting officer has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the

belief that an offense has been committed by the person to be arrested." *O'Neill v. Town of Babylon*, 986 F.2d 646, 650 (2d Cir.1993) (quoting *Calamia v. City of New York*, 879 F.2d 1025, 1032 (2d Cir.1989)). With respect to whether a wrongful arrest has occurred, "considerable uncertainty must be tolerated on occasion because of the need to allow the police to take immediate affirmative action in ambiguous circumstances." *Williams v. Kobel*, 789 F.2d 463, 468 (7th Cir.1986). The Constitution therefore "does not guarantee that only guilty persons will be arrested." *Baker v. McCollan*, 443 U.S. 137, 145, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *Krause v. Bennett*, 887 F.2d 362, 371 (2d Cir.1989) (noting that probable cause does not require an officer to be certain that subsequent prosecution of the arrestee will be successful). Evidence sufficient to establish probable cause need not be enough to support a conviction. *United States v. Fisher*, 702 F.2d 372, 375 (2d Cir.1983).

It is clear that the police were acting upon "speedy information." The officers were present at the scene of the verbal and physical altercation between the plaintiff and Bonacassio. Indeed, in a sense, the crime of disorderly conduct was still occurring as the disputing parties continued to argue over whether Bonacassio should be paid or should do additional work with no additional payment, once the police arrived. The officers separated the two men, obtained statements from them, and made a determination of probable cause based upon these statements and the conduct they observed.

Plaintiff argues that the police officer must consider all of the evidence available in making an arrest determination (which is true) and claims that, if the defendants had interviewed several other witnesses, they would have confirmed that the plaintiff's version of what occurred was correct and that Bonacas-

---

**2.** Connecticut General Statutes § 53a–182 defines "disorderly conduct" as follows:

(a) A person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) Engages in fighting or in violent, tumultuous or threatening behavior; or (2) by offensive or disorderly conduct, annoys or interferes with another person; or (3) makes unreasonable noise; or (4) without lawful authority,

disturbs any lawful assembly or meeting of persons; or (5) obstructs vehicular or pedestrian traffic; or (6) congregates with other persons in a public place and refuses to comply with a reasonable official request or order to disperse.

(b) Disorderly conduct is a class C misdemeanor.
*See also State v. Indrisano*, 228 Conn. 795, 640 A.2d 986 (1994) (supplying "interpretive gloss" to this statute).

sio's version was wrong. However, the statements of the persons referred to by the plaintiff indicate that none of them were present during the dispute outside the house between plaintiff and Bonacassio and, thus, their statements add nothing to the probable cause determination.

The plaintiff also argues that it was improper for the police to make a warrantless arrest on a misdemeanor charge at a person's home, citing *State v. Santiago,* 224 Conn. at 498, 619 A.2d 1132. His reliance on that case is misplaced. *Santiago* stands for the proposition that the police may not enter a suspect's house without a warrant in order to make a misdemeanor arrest. The police here did not enter the plaintiff's house to make an arrest. The plaintiff called the police himself. The discussions between the police and the plaintiff and Bonacassio and the arrest of both occurred outside the house, in a public place. *See United States v. Santana,* 427 U.S. 38, 42, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976).

Accordingly, we find that there no wrongful arrest occurred.

*Qualified Immunity*

■ Moreover, at a minimum, the defendants, who were sued only in their individual capacities, are entitled to qualified immunity. Where the factual record is not in serious dispute, as is the situation here, the determination of whether the police officer should have known he was acting unlawfully is a matter for the courts to decide, preferably on a pretrial motion for summary judgment. *Warren v. Dwyer,* 906 F.2d 70, 76 (2d Cir.), *cert. denied,* 498 U.S. 967, 111 S.Ct. 431, 112 L.Ed.2d 414 (1990).

■ While the plaintiff argues that the defendants may have been more favorably inclined to Bonacassio because he was a retired corrections officer, "under the doctrine of qualified immunity, we need only determine the 'objective legal reasonableness' of [the defendant's] actions." *Krause v. Penny,* 837 F.2d 595, 597 (2d Cir.1988). The Supreme Court long ago established that officers performing discretionary functions are shielded from liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a rea-

sonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The standard governing the availability of a qualified immunity defense is one of objective reasonableness designed to permit the resolution of insubstantial claims on summary judgment.

While summary judgment may not be a favored procedure generally in this Circuit, the use of it with respect to qualified immunity claims (where there are no material facts at issue) has been approved, indeed encouraged, in this Circuit. *In Cartier v. Lussier,* 955 F.2d 841, 843 (2d Cir.1992), the Second Circuit held:

Qualified immunity for government officials serves not only as a defense from liability, but also to spare public officials from shouldering the burdens and expense of litigation. The doctrine evolved as an accommodation between the need to provide private redress when government officials abuse their positions of public trust and the need to shield officials who responsibly perform their duties from the costs of defending an action. If public officials were not protected from the threat of frivolous suits, the cost to society would be substantial, ranging from an inability to attract qualified candidates to serve in public positions, to a diversion from the discharge of official duties and towards the avoidance of litigation, to inhibiting the zealous performance of official obligations.

*Id.* at 844 (citations omitted). Under these circumstances defendants are also entitled to summary judgment on the basis of their qualified immunity.