Dorothy GAUTREAUX, et al.,
Plaintiffs,

v.

CHICAGO HOUSING AUTHORITY, et
al., Defendants.

Nos. 66 C 1459, 66 C 1460.

United States District Court,
N.D. Illinois, E.D.

Feb. 26, 1985.

See also, 7th Cir., 690 F.2d 601.

Alexander Polikoff, Howard A. Learner, Chicago, Ill., for plaintiffs.

U.S. Atty.'s Office, Robert Grossman, Roan & Grossman, Patrick W. O'Brien, Mayer, Brown & Platt, Richard Flando, Acting Regional Counsel, Dept. of Housing & Urban Development, Stanley J. Garber, Corp. Counsel, Calvin H. Hall, Gen. Counsel, Chicago Housing Authority, Earl L. Neal, Sp. Asst. Corp. Counsel, Chicago, Ill., Jane McGrew, Gen. Counsel, Dept. of Housing and Urban Development, Washington, D.C., Gerald D. Skoning, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This litigation, now about to enter its twentieth year, began in 1966 when the plaintiff class brought related actions against the Chicago Housing Authority ("CHA") and the United States Department of Housing and Urban Development ("HUD") alleging that defendants had violated their rights under the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 *et seq.*, and the equal protection clause of the Fourteenth Amendment. Consistent with the modified consent decree which was accepted by this Court on July 16, 1981, HUD authorized the construction of the Academy Square project, a 200-unit Section 8 Family Housing Development. On July 16, 1982, the Court ordered that construction of this project be achieved by October 1, 1982. After the defendants failed even to begin construction by that deadline, Midwest Community Council ("Midwest") moved to intervene in this suit. The Court allowed Midwest to intervene on November 8, 1982, "as a party plaintiff for the limited purpose to monitor and enforce the previous orders of this Court as they relate to the Academy Square Development." Presently before the Court is Midwest's motion for attorney's fees. For the reasons set forth below, Midwest's motion is granted.

When Congress created the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, it recognized the critical nexus between providing for recovery of attorney's fees and ensuring enforcement of the civil rights laws.

> All of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain.

S.Rep. No. 1011, 94th Cong., 2d Sess. 4, *reprinted in* [1976] U.S.Code Cong. & Ad. News 5908, 5910. Congress further predicted that "[i]n the large majority of cases the party or parties seeking to enforce such rights will be the plaintiffs and/or plaintiff-intervenors." *Id.* at 5912. Thus, Congress explicitly noted that intervening parties as well as original plaintiffs might be entitled to attorney's fees. Various courts also have acknowledged the propriety of awarding attorney's fees to prevailing intervenors. *E.g., Donnell v. United States*, 682 F.2d 240 (D.C.Cir.1982), *cert. denied*, 459 U.S. 1204, 103 S.Ct. 1190, 75 L.Ed.2d 436 (1983); *Seattle School District No. 1 v. State of Washington*, 633 F.2d 1338 (9th Cir.1980), *aff'd*, 458 U.S. 457, 102 S.Ct. 3187, 73 L.Ed.2d 896 (1982); *Morgan v. McDonough*, 511 F.Supp. 408 (D.Mass. 1981), *aff'd*, 689 F.2d 265 (1st Cir.1982).

In order to recover attorney's fees, plaintiffs or intervenors must show that they prevailed—and that the underlying claim was an "action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964." 42 U.S.C. § 1988. Additionally, an intervenor's attorney's fee award may be limited by the Court's assessment of the proportionate contribution which the intervenor made to the ultimate success. We find that Midwest is entitled to attorney's fees as a prevailing party which made significant contributions to the plaintiffs' ultimate success regarding the Academy Square project.

■ The City argues that Midwest should not be awarded attorney's fees for several reasons. First, the City claims that Midwest did not act "to secure a recognized, constitutionally protected right" or to enforce any provision of the civil rights laws enumerated in section 1988. This claim is unpersuasive. Midwest's intervention served to enforce this Court's orders concerning the construction of certain public housing which the defendants agreed to provide. Midwest therefore helped obtain compliance with aspects of the consent decree which was entered into so that various constitutional and civil rights violations might be remedied. The connection between Midwest's actions and the plaintiffs'

civil rights claims is clearly not so tenuous as to preclude recovery of attorney's fees.

The City also claims that Midwest's role in this case is more accurately characterized as an *amicus curiae* than as a party plaintiff. This claim hardly requires a response, as it ignores the Court's express designation of Midwest as a limited "party plaintiff" and obviously understates Midwest's participation in the case.

■ We thus turn to the City's next argument, that Midwest is not a "prevailing party." It is clear that when Midwest moved to intervene, neither the principal plaintiffs nor the Court knew that the CHA was attempting to find an alternate site for the Academy Square project and to abandon the original site either through inaction or by seeking vacation of the condemnation award. After Midwest presented this information, we noted our concern that the original site would be lost before an alternate site had been approved.[1] We also questioned at that time whether the CHA would have made any formal request at all for HUD approval of the alternate site if Midwest had not brought its motion to intervene.[2] Later, when the Court directed the principal plaintiffs to move for a Rule to Show Cause, both the Court and plaintiffs' attorney acknowledged Midwest's role leading to that motion.[3]

The above examples are not meant to detail the full extent of Midwest's involvement in this case, but to illustrate how—at various points—Midwest was instrumental in maintaining the integrity of the Court's efforts regarding the Academy Square project. Indeed, we agree with Midwest that its careful monitoring of the City's actions and its aggressive activities ensuring compliance with the Court's orders, served to assure that the Academy Square project was not abandoned. Thus, we find that Midwest was a "prevailing party" entitled to recover attorney's fees. Moreover, in light of Midwest's significant—perhaps essential—contribution to the plaintiffs' success in achieving construction of the Academy Square project, it would be inappropriate to limit Midwest's recovery to some fraction of the total attorney's fees and costs actually incurred.

■ The City's final two objections to Midwest's request for fees may be answered briefly. First, the City claims that Midwest's time records are too vague to provide sufficient evidence of the reasonableness of the fees requested. We disagree. As the Supreme Court stated recently, "counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures." *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 1941 n. 12, 76 L.Ed.2d 40 (1983). Midwest's time records satisfy this requirement. They are broken down into small blocks of time and are explained in sufficient detail. Thus, they are not too vague to support Midwest's motion for fees.[4]

■ Second, the City contends that Midwest's motion should be denied because it is untimely. It is certainly within the Court's discretion to deny fees where a delay in filing the motion for fees has prejudiced the other party. *White v. New Hampshire Department of Employment Security*, 455 U.S. 445, 454, 102 S.Ct. 1163, 1167–68, 71 L.Ed.2d 325 (1982). However, the City has failed to demonstrate any prejudice in this case. The City merely states that Midwest's motion is *"ipso facto* prejudicial" because it is based on events which occurred up to two years ago. We disagree. Many civil rights cases take several

1. Transcript of November 4, 1982 hearing at 18.

2. *Id.* at 23.

3. Transcript of March 31, 1983 hearing at 20, 24 and 35.

4. We note additionally that the total hours listed in the time records appear reasonable. Moreover, the City has not disputed any specific entry on the records, either claiming that the amount of time is unreasonably long for a particular activity or asserting any conflict with the City's own records for activities in which both parties were involved.

years to resolve, as this litigation aptly demonstrates. And, as in this case, motions for fees will often encompass long periods of time. In light of these circumstances and without a more specific showing of prejudice, the Court declines to deny Midwest's motion as untimely.

Accordingly, Midwest's motion for attorney's fees and costs totalling $31,804.82 is granted. It is so ordered.