**AMERICAN BOOKSELLERS ASSOCIATION, INC., et al., Plaintiffs,**

**v.**

**William H. HUDNUT, III, Mayor of the City of Indianapolis, et al., Defendants.**

**No. IP 84–791–C.**

United States District Court, S.D. Indiana, Indianapolis Division.

Aug. 29, 1986.

Entry Nunc Pro Tunc Sept. 16, 1986.

John H. Weston, Brown, Weston & Sarno, Beverly Hills, Cal., Michael A. Bamberger, Finley, Kumble, Wagner, Heine, Underberg, Manley & Casey, New York City, Burton Joseph, Barsey, Joseph & Lichtenstein, Chicago, Ill., Richard Kammen, McClure, McClure & Kammen, Richard W. Cardwell, Ober, Symmes, Cardwell, Voyles & Zahn and Sheila Suess Kennedy, Mears, Crawford, Kennedy & Eichholtz, Indianapolis, Ind., for plaintiffs.

Mark Dall and Kathryn Watson, City of Indianapolis, Legal Div., Indianapolis, Ind., for defendants.

## ENTRY

BARKER, District Judge.

This matter comes before the court on the motions of three plaintiffs' counsel for an award of attorney fees, pursuant to 42 U.S.C. § 1988, following judgment in plaintiffs' favor in the above-captioned case. Before the court are the motions and supplemental motions of Finley, Kumble, Wagner, Heine, Underberg, Manley & Casey ("Finley Kumble"), counsel for American Booksellers Association, Inc. ("American

Booksellers"), Richard Kammen, counsel for plaintiff Video Shack, Inc., and Brown, Weston & Sarno ("Brown Weston"), counsel for intervenor-plaintiffs I.S.S.I. Theatre, Inc. and 4266 West 38th Street Corporation ("intervenors" or "intervenor-plaintiffs"). It is hereby ordered and adjudged that counsel for the plaintiffs are entitled to the following as reasonable fees and expenses: counsel for plaintiff American Booksellers Association, Inc., eighty-seven thousand, three hundred sixteen dollars and sixteen cents ($87,316.16); and counsel for plaintiff Video Shack, Inc., seven thousand, eight hundred sixty-two dollars and two cents ($7,862.02). The court makes no award on the petition of the intervenor-plaintiffs. The computations and reasons therefor are set out in the attached Memorandum.

## MEMORANDUM

### A. Recovery of Fees Generally:

The well-established "American Rule" is, of course, that a prevailing party is not ordinarily entitled to recover attorney fees from the loser. *See Pennsylvania v. Delaware Valley Citizens' Council,* ⸺ U.S. ⸺, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (citing *Aleyska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)). One of the primary exceptions to this rule is where Congress has expressly authorized courts to require one party to pay attorney fees to the other. *Id.*

Congress has so authorized the award of "reasonable" attorney fees for prevailing parties in civil rights actions brought under 42 U.S.C. § 1983. While Congress, pursuant to 42 U.S.C. § 1988, granted courts the discretion to make such awards, the Supreme Court has held that the court's discretion to deny fee awards should be exercised only when special circumstances would render such an award unjust. *New York Gaslight v. Carey,* 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980); *Newman v. Piggie Park Enterprises,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968) (per curium).

■ Against this backdrop, it is clear that most of the disputes regarding awards of attorney fees to prevailing plaintiffs in section 1983 actions have centered on what constitutes a "reasonable" fee. In making a fee award, a court should begin by determining the "lodestar" figure: the number of hours reasonably expended multiplied by a reasonable hourly rate. *See, e.g., Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Lynch v. City of Milwaukee,* 747 F.2d 423 (7th Cir.1984). The second step in the formulation, generally stated, is to adjust the lodestar figure upward or downward (by using "multipliers") to take into account certain other factors when the situation so warrants. *See Lynch,* 747 F.2d at 426. Both of these steps are more fully explored below in the context of the fee petitions at issue here.

Petitioners are the prevailing plaintiffs in this action which was commenced on May 1, 1984, against the mayor and City of Indianapolis ("City"), challenging the constitutionality of an "anti-pornography" ordinance passed by the Indianapolis City-County Council. On November 19, 1984, this court granted the plaintiffs' motion for summary judgment, declaring the ordinance to be unconstitutional, void, and of no effect. *American Booksellers Ass'n, Inc. v. Hudnut,* 598 F.Supp. 1316 (S.D.Ind. 1984). That decision was subsequently affirmed by the Seventh Circuit Court of Appeals, 771 F.2d 323 (1985), and by the United States Supreme Court, 106 S.Ct. 1172, *reh'g denied,* ⸺ U.S. ⸺, 106 S.Ct. 1664, 90 L.Ed.2d 206 (1986). In granting summary judgment, the court included an order assessing costs and reasonable attorney fees against the defendants. Now before the court are the motions of plaintiffs, American Booksellers and Video Shack, requesting the fixing of the amount of the fee award. Also before the court is the motion of intervenor-plaintiffs, I.S.S.I. and West 38th Street Corporation, seeking an award and fixing the amount of attorney fees. Petitioners seek attorney fees and expenses incurred in the prosecution of those proceedings as well as for their efforts relating to their requests for fees.

Because each request presents somewhat different issues, each will be dealt with separately.

*B.  Request for Finley Kumble:*

Finley Kumble, counsel for American Booksellers, requests an award for fees and expenses totalling one hundred three thousand, nine hundred twenty dollars ($103,-920.00).[1]  Because Finley Kumble has not requested the use of a multiplier to enhance the lodestar figure, this court will determine, based on all the evidence before it, the reasonableness of the hours expended and the rate charged by Finley Kumble.

*1.  Reasonableness of Rate:*

The City's primary objection to the request of Finley Kumble challenges the hourly rate applied by Finley Kumble.  Finley Kumble, a New York City law firm, requests $225.00 per hour for the partner who handled this case (Mr. Bamberger), $195.00 per hour for an attorney who is "of counsel" to the firm (Ms. Siegel), $105.00–$115.00 per hour for the associate lawyers (Mr. Burger, Mr. Mitchell, and Mr. Mandel), $150.00 per hour for Mr. Joseph,[2] $80.00 per hour for a summer law clerk (Ms. Macropoulos), and $65.00 per hour for "managing clerks" (Ms. Brown, Mr. Adago, and Ms. Aiken).  Finley Kumble makes these various hourly claims, asserting that the rates reflect the usual and ordinary fees charged in New York City for the work performed by them in this case.

The City contends that plaintiffs are not entitled to remuneration at New York rates because those rates are not the "prevailing market rates in the relevant community." *Blum v. Stenson,* 465 U.S. 886, 895, 104

S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984).  In its brief, the City maintains that "[m]ost Circuits follow the rule that the prevailing rate in the locality where the lawsuit is filed should be used, regardless of whether the attorney normally practices elsewhere," citing *Hamilton v. Daley,* 777 F.2d 1207, 1213 (7th Cir.1985).  The City therefore contends that Finley Kumble should be limited to the rates charged in the Indianapolis area, rates which are substantially less.[3]

Despite the City's reliance on *Hamilton,* that case did not address the issue of out-of-town counsel.  Instead, it held that when the attorneys for prevailing parties are public employees who will not personally receive a fee award, the fee award should still be based on reasonable billing rates in the relevant community.  *Id.*

Moreover, in *Chrapliwy v. Uniroyal, Inc.,* 670 F.2d 760 (1982), *cert. denied,* 461 U.S. 956, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983), the Seventh Circuit recognized that the "relevant community" or "locality" should not be interpreted always to mean the locality where the lawsuit is heard.  *Id.* at 768.  While the locally prevailing rate may generally be an accurate barometer of a reasonable rate, the Seventh Circuit noted that, in some cases, the complexity, specialized nature of the case, and unavailability locally of services of like quality may justify an award based on the regular billing rates of out-of-town counsel.  *Id.* at 768–69.  Indeed, the *Chrapliwy* court criticized the lower court's assumption that the term "locality" as used in the context of a "fee customarily charged in the locality for similar legal services," (*Waters v. Wisconsin Steel Works,* 502 F.2d 1309 (7th Cir.

---

**1.**  This figure does not correspond precisely with the court's own computation of $105,185.79.  In any event, the court will focus on the individual breakdown of the request rather than on the total sum prayed for.

It should also be noted that this total includes the request of Mr. Burton Joseph, a Chicago attorney who is not affiliated with Finley Kumble but who participated to some extent with Finley Kumble in this action.  His request of $10,800.00 will be considered separately in this section.

For the court's computation of the fees and costs requested by Finley Kumble, see Appendix A.  These amounts do not include the portion of the request made for the efforts of certain local counsel who have already reached settlement with the City.

**2.**  *See supra* note 1.

**3.**  The City has offered evidence that these rates would be $75.00–$125.00.

1974)) meant the locality where the case was heard. While the Court of Appeals found that consideration relevant to the issue of reasonableness, it found that the fee customarily charged in the locality where the attorney normally practices is also relevant. The pertinent questions in fixing the amount of a particular fee are "whether services of like quality are truly available in the locality where the services are rendered, and whether the party choosing the attorney from elsewhere acted reasonably in making that choice." 670 F.2d at 769.

■ Although this court certainly recognizes and acknowledges that there are Indiana attorneys who could have competently handled this case on behalf of plaintiffs, it must also acknowledge that based on the breadth of experience that Finley Kumble possesses in litigating first amendment questions, it is unlikely that "services of like quality [were] truly available" locally. *Id.* As the *Chrapliwy* court pointed out,

> [i]f a high priced, out of town attorney renders services which local attorneys could do as well, and there is no reason to have them performed by the former, then the judge, in his discretion, might allow only an hourly rate which local attorneys would have charged for the same service.

*Id.* at 768. The broad experience of Finley Kumble, including its handling of several other significant first amendment cases in the federal courts and its filing of numerous amicus briefs before the Supreme Court, makes it unlikely that the plaintiffs could have obtained equal representation locally. The City has not demonstrated that like or equal experience was available locally. Furthermore, the court notes that while the billing rates of specialists from large cities may be higher, the expertise of the specialist may actually reduce the number of hours that would normally be necessary to gain a mastery of the particular area of the law.

Another factor leading this court to conclude that it was reasonable for the plaintiffs to engage out-of-town counsel is that Finley Kumble has represented the plaintiff trade associations in first amendment matters for over eight years. In fact, Finley Kumble had represented the plaintiffs in their effort to defeat passage of the ordinance challenged in this case, before a lawsuit was even filed. The court, therefore, cannot say that it was unreasonable for American Booksellers to have its legal services performed by Finley Kumble. *See id.*

The Seventh Circuit, in awarding an attorney fee "under Title VII or similar statute," has given judges the discretion to question the reasonableness of an out-of-town rate where there is reason to believe that "services of equal quality were readily available" at a lower rate in the area where the services were to be rendered. *Id.* at 769. However, after reviewing all the evidence presented in the briefs and accompanying affidavits, this court is persuaded that services of *equal quality* were not *readily available* in the Indianapolis area and that the plaintiffs' engagement of New York counsel was reasonable. Therefore, Finley Kumble attorneys [4] will be awarded attorney fees based on what they have demonstrated to be reasonable billing rates for the locale in which they normally practice.

### 2. *The Request of Mr. Joseph:*

■ Mr. Joseph, who has requested an award of $10,800.00 based on seventy-two hours expended at a rate of $150.00 per hour, is not a member of the Finley Kumble firm. He is a partner in a Chicago law firm, with significant experience in first amendment matters, who participated with Finley Kumble in the prosecution of this matter.

Despite his unchallenged qualifications, the court is unable to accept petitioner's claim that Mr. Joseph's request represents

---

**4.** This finding, however, does not apply to the billings with regard to Mr. Joseph, the law clerk, and Finley Kumble's "managing clerks," which will all be discussed *infra.*

a reasonable number of hours expended at a reasonable rate.

First, the court finds it inconsistent that Finley Kumble would contend, on the one hand, that it is entitled to New York billing rates for its special expertise in first amendment matters but would also maintain that it had need of assistance from additional non-local counsel. Therefore, to the extent that Mr. Joseph is entitled to an award for a reasonable number of hours expended, that award is limited to prevailing local rates, which this court sets at $125.00.

■ Furthermore, this court has difficulty accepting as reasonable and necessary much of the time reportedly spent by Mr. Joseph on the plaintiff's behalf. Diary entries merely indicating time spent for "research," without any further identification or description of the research, are insufficient. Simularly, entries for "telephone conference" do not indicate who was on the other end of the line, and in some instances, are not consistent with the diary entries of the attorneys at Finley Kumble. Finally, for the reasons stated in the previous paragraph, the court finds that the engagement of another expert on this matter resulted in unnecessary duplication of effort. For these reasons, recovery of the costs of Mr. Joseph's representation are limited to the court's estimate of Mr. Joseph's specifically-described time, and which time expenditures are not manifestly duplicative. The court therefore computes the reimbursable hours at seventeen, and awards the sum of two thousand, one hundred twenty-five dollars ($2,125.00) in payment therefor.

### 3. Hours Reasonably Expended:

■ For the most part, neither the City nor this court quarrels with the number of hours for which the Finley Kumble attorneys seek compensation. The City, however, does contend that the number of

hours spent by the attorneys in conference is excessive and should be reduced.[5] These conferences, the City maintains, were necessitated by the fact that the plaintiffs had so many attorneys working on the case. The evidence reveals, however, that Finley Kumble rarely had more than two or three attorneys working on a matter at any given time, not including the proportionally few hours expended by local counsel. It does not seem unreasonable to this court for a law firm, litigating a case of constitutional import in and from the district court to the court of appeals to the Supreme Court, to use two or three attorneys at one time and to spend a considerable number of hours in coordinating efforts and planning strategy. Indeed, time well spent in conference can prevent the unnecessary duplication of effort sometimes caused by poor communication. The court, therefore, bases its fee award on the total number of hours documented by the Finley Kumble attorneys.[6] Those hours, multiplied by the reasonable rate approved in subsection one of this discussion, are computed as follows:

| Attorney | Hours | (Multiplied) Times | Rate | (Equals) Total |
|---|---|---|---|---|
| Mr. Bamberger | 132.9 | x | $225. | $29,902.50 |
| Mr. Burger | 122.0 | | 105. | 12,810.00 |
| Ms. Siegel | 9.5 | | 195. | 1,852.50 |
| Mr. Mitchell | 180.5 | | 115. | 20,757.50 |
| Mr. Mandel | 25.6 | | 115. | 2,944.00 |

### 4. Request for Law Clerk Reimbursement:

■ The Finley Kumble petition also contains a request for an award of nine thousand, seven hundred twenty dollars ($9,720.00) for the time expended by Ms. Macropoulos, a law student employed by Finley Kumble during the summer of 1984. This request is based on 121.5 hours at $80.00 per hour. From the itemized time sheets, it appears that Ms. Macropoulos was responsible for some of the initial research, drafting, and gathering of exhibits in conjunction with the summary judgment proceedings in this court.

---

**5.** It is difficult to measure precisely the number of hours spent in conference because the timesheets often include descriptions of other tasks within the same entry.

**6.** The hours reported by Mr. Mitchell are reduced, however, from 191.5 hours to 180.5 hours for apparent inconsistencies or excessive billings on April 19, 20, and 28, 1984.

First, while the court accepts the contention of Finley Kumble that New York rates are due counsel because of their special expertise in first amendment matters, it does not assume that such is true of a student law clerk. Therefore, the court sets the billing rate for Ms. Macropoulos' time at $50.00 per hour, a figure more accurately reflective of the billing rates for "summer associates" in the Indianapolis area.[7]

■ Second, the court finds it necessary to reduce the number of hours claimed in arriving at a reasonable figure for the actual tasks performed. According to the timesheets, from May 31 to June 4 of 1984, Ms. Macropoulos spent twenty hours to "review the file" in this case, and from July 19 to July 24, a total of 26.5 hours to assemble and review the "legal structural and case file." The court finds these hours excessive and reduces them by one-half. Additionally, the entry for June 19 reveals an inconsistency regarding conference time and the July 6 entry indicates a duplication of effort. These hours are thus eliminated from a reimbursement award. In sum, then, applying the lodestar figure to Ms. Macropoulos' claim, the award is computed on the basis of 104.5 hours (121.5–17) at $50.00 per hour, for a total of five thousand two hundred twenty-five dollars ($5,225.00).

### 5. Award for "Managing Clerks" and Word Processing:

■ Finley Kumble's fee petition includes a request for "managing clerks" who, according to the timesheets, were responsible for "docketing and diarying" (4.7 hours at $65.00 per hour) and for the expenses for word processing ($3,341.58). Finley Kumble suggests in its reply brief that this type of billing is customary in New York.[8] Although the court is willing to award New York rates for attorney fees, it does not necessarily follow that Finley Kumble is entitled to an award based on all practices regarded as customary in New York. The City has presented evidence indicating that the expenditures for the tasks performed by the "managing clerks" are considered part of overhead for law firms in this locale. Additionally, though the City has presented no evidence on this issue, the court takes judicial notice of the fact that expenses for word processing are also generally considered part of a law firm's overhead in this locale. Consequently, no award for the time of managing clerks or for word processing is made. As to the other expenses incurred, the court finds them reasonable and adequately documented and does, therefore, award the sum requested.

### 6. Summary—Request for Finley Kumble:

For the sake of clarity, the court summarizes its award to counsel for American Booksellers.[9]

| | |
|---|---|
| Mr. Bamberger | $29,902.50 |
| Mr. Burger | 12,810.00 |
| Ms. Siegel | 1,852.50 |
| Mr. Mitchell | 20,757.50 |
| Mr. Mandel | 2,944.00 |
| Ms. Macropoulos | 5,225.00 |
| Mr. Joseph | 2,125.00 |
| expenses | 11,699.66 |
| | $87,316.16 |

### C. Request for Mr. Kammen:

Mr. Kammen, counsel for Video Shack, Inc., has petitioned the court for an award of nine thousand, four hundred ninety dollars ($9,490.00), which represents 83.8 hours at $90.00 per hour, costs in the amount of $320.02, and a twenty-five per-

---

7. Although the City has not specifically countered the New York rate with any evidence of a lower rate in Indianapolis, this court will take judicial notice of the prevailing Indianapolis rate.

8. Actually, the only evidence presented was in regard to managing clerks.

9. This award is based on the original motion of American Booksellers and the four supplemental requests. It does not include amounts originally requested by American Booksellers for local counsel Sheila Suess Kennedy and Richard Cardwell, as the court has been informed that those requests have previously been settled.

cent (25%) "multiplier" to enhance the award as to 68.8 hours.

The City first objects to compensation for three hours it claims are not included in Mr. Kammen's itemized hours listed on his timesheets. This court's own arithmetic, however, shows that Mr. Kammen's itemized hours do indeed equal the hours specified in his petition. Aside from this discrepancy, the City does not oppose the reasonableness of the hours expended by Mr. Kammen or the rate of compensation he seeks. However, the City disagrees, as does this court, with Mr. Kammen's contention that he is entitled to a twenty-five percent (25%) enhancement of the major portion of the fee on account of the "particularly novel question of law" presented in this cause.

At the outset, it should be noted that the Supreme Court has ruled that the circumstances under which a "multiplier" or enhancement of the lodestar figure should be awarded are very narrow. As the Court recently stated, many of the factors considered in determining the reasonableness of the rate are subsumed within the initial calculation of the lodestar. *Pennsylvania v. Delaware Valley Citizens' Council,* — U.S. ——, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986). *See also Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). In *Blum,* the court specifically held that the "novelty [and] complexity of the issues," "the special skill and experience of counsel," the "quality of representation," and the "results obtained" are presumably fully reflected in the lodestar figure and, therefore, cannot serve as independent bases for increasing the basic fee award. 465 U.S. at 898–900, 104 S.Ct. at 1548–49. Although the *Blum* opinion did not hold that upward adjustments are never permissible, it approved them "only in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to what one should reasonably expect in light of the hourly rates charged and that the success was 'exceptional.'" *Id.* at 899, 104 S.Ct. at 1549 (citing *Hensley,* 461 U.S. at 435).

■ Given these guidelines, and there being no evidence adduced to support the mere assertion of Mr. Kammen that the case presented a "particularly novel question of law," the court finds that Mr. Kammen has failed to sustain his burden of demonstrating that he is entitled to the upward adjustment of the award which he seeks. *See Delaware Valley,* 106 S.Ct. at 3099–3100. Therefore, Video Shack is entitled to and shall receive an award of attorney fees for Mr. Kammen computed on the basis of 83.8 hours at $90.00 per hour, plus costs of $320.02, for a total of seven thousand, eight hundred sixty-two dollars and two cents ($7,862.02).

## D. *Petition of Intervenors:*

Counsel for intervenor-plaintiffs I.S.S.I. and 4266 West 38th Street Corporation, Brown Weston, has filed a motion seeking an award of seven thousand, nine hundred three dollars and one cent ($7,903.01). This figure represents 19.1 hours expended by Mr. Brown, a partner, and 10.8 hours expended by Mr. Weston, a partner, who both billed at $210.00 per hour. It further reflects the 8.65 hours of an associate attorney, Mr. DePiano, whose rate is $135.00 per hour, plus a claim for four hundred fifty-six dollars and twenty-six cents ($456.26) to reimburse their expenses.

The intervenor-plaintiffs were granted leave of court to intervene in this action shortly after the original Complaint was filed. According to the affidavits filed in support of their fee petition, Brown Weston's role in the litigation was primarily that of reviewing the ordinance at issue, reviewing the papers filed by lead counsel in the suit, and discussing strategy—all to ensure that their clients' interests were being protected. Aside from the motion to intervene, its adoption of the motion for summary judgment, and this fee petition,

the intervenor-plaintiffs filed no papers with the court during the various proceedings. As Mr. Weston has stated in his affidavit to the court,

> I have known many of Plaintiffs' counsel for many years and felt confident that they would do a competent and professional job of articulating the basic legal challenges to the challenged legislation. I conferred with counsel and then [or others in my office] reviewed all of their pleadings to confirm that no necessary legal arguments had been omitted or misstated and that no arguments inimical to my clients' positions had been advanced. When the pleadings proved to be satisfactory, I adopted them without filing individualized supplementary ones of my own.

As a threshold matter, the intervenors assert that they are "prevailing parties" within the contemplation of 42 U.S.C. § 1988. The legislative history of section 1988 supports this contention:

> All of these civil rights laws depend heavily upon private enforcements, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain.
>
>     *     *     *     *     *     *
>
> In the large majority of cases the party or parties seeking to enforce such right will be the plaintiffs and/or plaintiff-intervenors.

S.Rep. No. 1011, 94th Cong., 2d Sess. 4, *reprinted in* 1976 U.S.Code Cong. & Ad. News 5908–12. Congress therefore acknowledged that intervening parties might, in some circumstances, be entitled to attorney fees.

      Generally, a judge should exercise her discretion not to award attorney fees to prevailing parties only in limited, special circumstances. *See Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968).

On the other hand, courts have held that a court's discretion in awarding a reasonable attorney fee to intervenors should be based on a stricter standard. For example, in *Donnell v. United States*, 682 F.2d 240 (D.C.Cir.1982), *cert. denied*, 459 U.S. 1204, 103 S.Ct. 1190, 75 L.Ed.2d 436 (1983), the court found, in reversing an attorney fee award under identical language in the Voting Rights Act, that the Congressional objective in making attorney fee awards available is not so compelling in the case of intervenors. In these cases, the civil rights of the intervenors have been vindicated by the original plaintiff and the intervenor should recover only if it substantially contributed toward the outcome. *Id.* 682 F.2d at 247–48. Although formulated somewhat differently, a court in the Seventh Circuit has recently held that even though an intervenor may be considered a "prevailing party," the attorney fee award "may be limited by the court's assessment of the proportionate contribution which the intervenor made to the ultimate success." *Gautreaux v. Chicago Housing Authority*, 610 F.Supp. 29 (N.D.Ill.1985). In *Gautreaux*, the court found that the intervention had served to enforce an earlier order of the court and had a "significant—perhaps essential—contribution to the plaintiffs' success." *Id.* at 31.

While this court does not doubt the sincerity or quality of the efforts of Brown Weston in monitoring this litigation, the court observes that it did not contribute significantly to the ultimate success of the plaintiffs. As the Court of Appeals for the District of Columbia stated, "Obviously, if an intervenor did nothing but simply show up at depositions, hearings, and the trial itself, and spend lots of time reading the parties' documents, an award of attorneys' fees would be inappropriate." *Donnell*, 682 F.2d at 249. The evidence before the court indicates that such were the boundaries of Brown Weston's participation.

Brown Weston argues in its reply brief that a denial of a fee award would, in

effect, penalize the firm for the efficiency it demonstrated by not jumping fully into the action and filing briefs of its own. This argument, though, is based on the erroneous assumption that the intervenors would have recovered an award for such patently duplicative efforts. In finding that the intervenors are not entitled to an award of attorney fees, this court is in no way penalizing attorneys who rest on the satisfactory work of lead counsel rather than "running up" high billings of their own. Rather, the court seeks to so fashion its judgments as' to avoid awards that might encourage counsel, whose participation would not contribute significantly to the success, to "jump on the [fees] bandwagon."

### Conclusion

For the foregoing reasons, the court awards plaintiff American Booksellers attorney fees of eighty-seven thousand, three hundred sixteen dollars and sixteen cents ($87,316.16), and plaintiff Video Shack seven thousand eight hundred sixty-two dollars and two cents ($7,862.02). The court makes no award on the petition of intervenor-plaintiffs I.S.S.I. Theatre, Inc. and West 38th Street Corporation.

APPENDIX A

Request for Finley Kumble

| | Original Motion | 1st Supp. | 2nd Supp. | 3rd Supp. | 4th Supp. | Total Hours | Rate $ | Total Request |
|---|---|---|---|---|---|---|---|---|
| Mr. Bamberger | 70.5 | 27.0 | 5.4 | 8.1 | 1.9 | 132.9 | 225. | $ 29,902.50 |
| Mr Burger | | 49.1 | 50.5 | 12.6 | 9.8 | 122.0 | 105. | 12,810.00 |
| Ms. Siegel | | 5.5 | 4.0 | | | 9.5 | 195. | 1,852.50 |
| Mr. Mitchell | 191.9 | | | | | 191.9 | 115. | 22,068.50 |
| Mr. Mandel | 25.6 | | | | | 25.6 | 115. | 2,944.00 |
| Ms. Macropoulos | 121.5 | | | | | 121.5 | 80. | 9,720.00 |
| Mr. Joseph | 54.0 | 18.0 | | | | 72.0 | 150. | 10,800.00 |
| Ms. Brown | .6 | | | | | .6 | 65. | 39.00 |
| Mr. Adago | | 1.6 | .4 | | | 2.0 | 65. | 130.00 |
| Ms. Aiken | 1.6 | .5 | | | | 2.1 | 65. | 136.50 |
| | | | | | | | | 90,403.00 |
| Expenses | $7851.30 | 3425.70 | 3019.33 | 188.96 | 297.50 | | | 14,782.79 |
| Totals | | | | | | | | $105,185.79 |

### ENTRY NUNC PRO TUNC

This matter is before the court upon its own initiative relative to its August 29, 1986 entry fixing an award of attorney fees in the above-captioned cause.

Because the August 29, 1986 award included a computational error in the amount of expenses to be awarded the plaintiffs for lead counsel Finley, Kumble, Wagner, Heine, Underberg, Manley & Casey ("Finley Kumble"), the court hereby supplements its entry to correct that error. This error resulted from the court's employing an incorrect figure as the amount requested rather than the correct total request for expenses as set out in the Appendix to that entry. Counsel for plaintiff American Booksellers Association, Inc., Finley Kumble, is entitled to an award of eleven thousand, four hundred forty-one dollars and twenty-one cents ($11,441.21) rather than the amount of eleven thousand, six hundred ninety-nine dollars and sixty-six cents ($11,699.66) as specified in the August 29, 1986 entry. Therefore, the total award of attorney fees and expenses for Finley Kumble is eighty-seven thousand, fifty-seven dollars and seventy-one cents ($87,057.71).