FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER
ALAN B. JOHNSON, Chief Judge.
This matter comes before the Court on a motion for attorney’s fees filed by counsel for the plaintiff inmates. A hearing was held on the motion on January 26, 1994. Fees are sought for work performed in connection with the recent contempt litigation in this case. The Court has reviewed this motion, and the briefs and affidavits filed by the parties. In addition, the Court has first­hand knowledge of the manner in which this litigation has been conducted; the skill of counsel; the pleadings filed by each side; the evidence that gave rise to the 1990 Consent Decree and the 1993 contempt citation; as well as the evidence presented at the con­tempt hearing on July 28, 1993. Now, being fully advised in the premises, the Court makes the following findings of fact and con­clusions of law.

Introduction

1. This lawsuit has had three phases. The first phase commenced in 1989 with the filing of this suit, seeking broad declaratory and injunctive relief from unconstitutional conditions of confinement in the Natrona County Jail. In February 1990, the Court entered an Order holding that defendant county was violating plaintiffs’ rights under the Eighth Amendment regarding over­crowding, staffing, and recreation. In May 1990, the plaintiffs and the Board of County Commissioners of Natrona County (“Coun­ty”) entered into a Consent Decree in which these and other deficiencies were to be recti­fied.
2. The second phase of this litigation commenced in early 1992. Plaintiffs filed a motion seeking to hold the County in con­tempt of court for violating several provisions of the 1990 Consent Decree. However, the parties were able to resolve that matter. The County admitted its failings and entered *1543 into a settlement agreement with the plain­tiffs, promising to rectify the shortcomings.
3. The third phase of this litigation com­menced in November 1992. Plaintiffs filed another motion seeking to hold the County in contempt of court for violating the 1990 De­cree. This time, rather than attempt to set­tle the matter, the County resisted the con­tempt motion, and filed a brief in which it “denies all of the allegations in plaintiffs’ Motion.” Subsequently, the County also filed a motion seeking to modify the 1990 Consent Decree.
4. A hearing was held before this Court on plaintiffs’ motion to hold the County in contempt on July 28, 1993. The evidence adduced at the hearing demonstrated that the County was in contempt. A comprehen­sive order was issued by this Court on Au­gust 12, 1993, detailing the failures of the County to abide by that Decree.
5. Subsequently, counsel for plaintiffs and the County resolved the issues raised in the County’s motion to modify, and the Court signed an appropriate order modifying these portions of the 1990 Decree.

Entitlement to Attorney’s Fees

6. Counsel for the plaintiffs are Stephen Pevar of the Mountain States Office of the American Civil Liberties Union located in Denver, Colorado, and Daniel Blythe, an at­torney in private practice in Cheyenne, Wyo­ming. They have represented the plaintiffs from the beginning of this lawsuit in 1989.
7. Plaintiffs’ counsel are entitled to an award of attorneys’ fees for their efforts relating to the contempt action by virtue of two principles of law. First, their efforts with regard to the contempt motion consti­tuted reasonable post-judgment work that was necessary to secure the improvements anticipated by the 1990 Consent Decree. The Tenth Circuit in Duran v. Carruthers, 885 F.2d 1492, 1496 (10th Cir.1989), and this Court in MacLaird v. Werger, 723 F.Supp. 617 (D.Wyo.1989), have held that attorney’s fees should be awarded for reasonable post-­judgment monitoring of a Consent Decree in institutional litigation. The Court finds that plaintiffs’ monitoring efforts, including the prosecution of contempt litigation in order to ensure compliance with the 1990 Decree, were reasonable.
8. Even if the “monitoring” standard were not applicable in this situation, plaintiffs would still be entitled to recover their attor­ney’s fees because they are “prevailing par­ties” in the contempt litigation. Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); Blum v. Stenson, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); Love v. Mayor of Cheyenne, 620 F.2d 235 (10th Cir.1980).
9. In this instance, the work undertaken by counsel for the plaintiffs with regard to the contempt litigation was directly related to the enforcement of the 1990 Consent De­cree. As explained in detail in the August 12, 1993, decision of the Court finding the County in contempt, the County had failed to implement significant portions of the Decree. Thus, the work performed by counsel in the contempt action helped to ensure full compli­ance with the existing Decree. Similarly, the County’s filing of a motion to modify re­quired plaintiffs’ counsel to devote time and effort to this litigation, and plaintiffs’ counsel are entitled to recover fees for the time spent in that post-judgment effort.
10. The Tenth Circuit has ruled that counsel for a prevailing party is entitled to recover fees for time spent in pursuing a fee claim under 42 U.S.C. § 1988. Love v. May­or of Cheyenne, 620 F.2d 235 (10th Cir.1980). Work Performed and Hours Expended
11. Prevailing parties in civil rights litiga­tion are entitled'to recover their reasonable attorney’s fees and costs. 42 U.S.C. § 1988. The standards for awarding fees are set out in Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), and Ramos v. Lamm, 713 F.2d 546 (10th Cir.1983).
12. Only one of plaintiffs’ counsel, Stephen L. Pevar, is seeking to recover at­torney’s fees, and has submitted his time records. The records are accompanied by an affidavit from Mr. Pevar, certifying that all of the hours claimed were devoted to the con­tempt proceeding against the County. Based upon this Court’s review of Mr. Pe-­var’s time records, and his representations that he carefully reviewed those records and deleted any time spent in this litigation not related to plaintiffs’ claims against the Coun­ *1544 ty, the Court finds that all of plaintiffs’ hours are reasonable. It is noted that the County apparently seeks to challenge a few of Mr. Pevar’s hours. However, the Local Rules of this Court require that a response to a mo­tion be filed within ten days. In this case, Mr. Pevar’s motion for attorney’s fees was filed more than three months ago, and yet the County filed its response 48 hours prior to the hearing. As a consequence of the County’s unexcused delay, this Court is disal­lowing the County’s challenge to the number of hours claimed by Mr. Pevar.

Billing Rate

13. The sharpest conflict arising in this claim for attorney’s fees concerns the billing rate. Mr. Pevar requests the award of attorney’s fees based upon a billing rate prevailing in the community in which his office is located, Denver. The County, on the other hand, .contends that the billing rate should be the rate prevailing in the communi­ty in which this ease was litigated, Casper.
14. The Tenth Circuit and other courts have ruled that, absent unusual circum­stances, an attorney seeking fees under § 1988 is limited to the fee rate charged by attorneys in the local community possessing similar expertise. See Ramos v. Lamm, 713 F.2d at 555.
15. The Tenth Circuit has not addressed the question of what circumstances must be present in order to warrant an award of attorney’s fees based upon out-of-town rates. However, numerous other courts have estab­lished a number of criteria which this Court finds useful. These standards include wheth­er (1) the case required a specialized exper­tise not found in the local market; (2) the ease required or could have required signifi­cant financial resources; (3) the case raised unpopular issues; and (4) it was reasonable for the clients to look to out-of-town counsel because attorneys in the community have not filed, and have shown no interest in fifing, such litigation.
16. Mr. Pevar reports that he has been employed as staff counsel with the ACLU for more than 17 years. During that time, he has filed nearly a dozen “totality of condi­tions” eases, including this one, against vari­ous jails in Wyoming. He states that, to his knowledge, no Wyoming attorney has filed such a case. Significantly, the County is unable to cite to any such cases that have been initiated by Wyoming attorneys, and this Court knows of no such case. It is also significant that, although the County has had three months in which to submit affidavits, the County has not submitted an affidavit from any Wyoming attorney indicating that this attorney would consider fifing a “totality of conditions” lawsuit against a jail in Wyo­ming.
17. This Court is familiar with Mr. Pe-­var’s work and has presided over several of his “conditions” lawsuits. Mr. Pevar has demonstrated his experience and capabilities. The Court is also aware that this type of litigation requires significant expertise. Al­though it is true that this particular motion for fees is based upon work in the contempt proceeding, the Court finds that (1) expertise in the field of jail litigation was necessary to properly handle the contempt proceeding, and (2) it was reasonable for Mr. Pevar to handle the contempt proceeding given that he had obtained the underlying Consent De­cree on behalf of his clients. The Court notes that Mr. Pevar is a graduate of Prince­ton University and the University of Virginia School of Law, possessing 22 years of experi­ence in civil rights cases and prisoners’ rights cases in particular. Mr. Pevar has demon­strated a deep understanding concerning the problems of jail conditions in Wyoming and is keenly aware of the needs of inmates in Wyoming.
18. Defendants have failed to show that there are attorneys in the local community, or anywhere in Wyoming, who are available to supply this special expertise.
19. In West Virginia University Hospi­tals v. Casey, 499 U.S. 83, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991), the Court held that the cost of expert witnesses normally cannot be recovered under § 1988. Given that expert witnesses are often required in “totality of conditions cases,” this results in another di­sincentive to take these cases by attorneys in Wyoming. The experience of this Court has been that only public interest law firms such as the ACLU have the financial resources to invest in this kind of litigation.
*1545 20. Plaintiffs submitted affidavits from four Wyoming attorneys. Each attorney states that he or she would not file a “totality of conditions” lawsuit against a Wyoming jail due to the lack of expertise and the expense of such litigation, that they know of no Wyo­ming attorney who would file such a case, and that all requests they have received to file such cases have been referred to Mr. Pevar in the Denver office of the ACLU.
21. The Court takes notice of the fact that most inmates of Wyoming jails have, or would have had, criminal defense counsel. The fact that no Wyoming attorney has filed a case seeking systemic improvements of jail conditions suggests that there is no reason­able likelihood that inmates can obtain legal assistance locally in these cases.
22. The Court finds the following eases to be instructive in this regard: Chrapliwy v. Uniroyal, Inc., 670 F.2d 760 (7th Cir.1982) (out-of-town rates should be awarded unless defendant shows that a local lawyer was available with the requisite skills to handle the complex and specialized nature of the case); Maceira v. Pagan, 698 F.2d 38, 40 (1st Cir.1983) (affirming award of out-of-town rates to counsel when there was “no evi­dence” that lawyers of similar expertise and specialization were available in the locality where trial took place); Polk v. NYS Dept. of Corr. Services, 722 F.2d 23, 25 (2d Cir.1983) (acknowledging that out-of-town rates can be awarded “upon a showing that the special expertise of counsel from a distant district is required.”); Dunn v. The Florida Bar, 726 F.Supp. 1261, 1279-1280 (M.D.Fla.1988), aff'd, 889 F.2d 1010 (11th Cir.1989), (award­ing Washington, D.C. rates in Florida civil rights case where local counsel needed spe­cialized assistance from out-of-state that was unavailable in local community); American Booksellers Ass’n., Inc. v. Hudnut, 650 F.Supp. 324, 328 (S.D.Ind.1986) (awarding out-of-town rates to counsel with special ex­pertise, and noting that defendants had not demonstrated that counsel with similar ex­pertise was available locally); and Riddell v. National Democratic Party, 545 F.Supp. 252, 256 (S.D.Miss.1982) (where special ex­pertise is unavailable locally, the proper fee rate is that prevailing within the out-of-town lawyer’s community, not the local communi­ty).
23. Based upon the evidence in the rec­ord, the Court finds that this ease presents unusual circumstances warranting the award of out-of-town rates.
24. Mr. Pevar claims that an attorney with his expertise as a civil rights attorney in the Denver legal community would charge $205.00 an hour. However, the affidavits filed by Mr. Pevar do not sufficiently demon­strate this fact. Accordingly, based upon the evidence submitted, the Court finds that a reasonable rate is $150.00 an hour.
25. The hours claimed by Mr. Pevar total 275.6. These include hours related directly to the contempt litigation itself, to the Coun­ty’s motion to modify, and to pursuing his fee claim.
26. Mr. Pevar is therefore entitled to the award of $41,340.00, representing 275.6 hours at $150 an hour.[1]
27. In addition, Mr. Pevar seeks the recovery of litigation costs, such as deposi­tion transcripts, travel expenses in connec­tion with depositions and the contempt hear­ing, postage, and long distance telephone charges in the total amount of $1,281.77. Such fees are compensable under Section 1988. See Ramos v. Lamm, 713 F.2d at 559-­560. The Court finds this request reasonable and awards recovery of those costs.
THEREFORE, IT IS HEREBY OR­DERED, that the following attorney’s fees and costs are awarded to the ACLU: attor­ney’s fees in the amount of $41,340.00, and costs in the amount of $1,281.77, for a total amount of $42,621.77. Legal interest on this amount shall accrue if the fees are not paid within 30 days.

. The attorney's fees are actually going to the ACLU. Mr. Pevar has advised the Court that he receives no portion of the fee award.